21 A.3d 619

STATE OF NEW JERSEY IN THE INTEREST OF V.A., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF T.H., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF C.T., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF M.R., A MINOR.

Superior Court of New Jersey
Appellate Division

Argued May 24, 2011—Decided June 22, 2011.

Before Judges PAYNE, BAXTER and KOBLITZ.

*Nancy A. Hulett*, Assistant Prosecutor, argued the cause for appellant State of New Jersey (*Bruce J. Kaplan*, Middlesex

County Prosecutor, attorney; *Ms. Hulett*, of counsel and on the brief).

*Patrick C. O'Hara, Jr.*, argued the cause for respondent V.A. (*DelVacchio O'Hara, L.L.C.*, attorney; *Mr. O'Hara*, on the brief).

*Joel A. Friedman*, attorney for respondent C.T., joins in the brief of respondent V.A.

*William M. Fetky*, attorney for respondent M.R., joins in the brief of respondent V.A.

Respondent T.H. has not filed a brief.

The opinion of the court was delivered by

BAXTER, J.A.D.

By leave granted, the State appeals interlocutory orders denying its motions for waiver of four juveniles to the Law Division for prosecution as adults. After finding that the State had established probable cause to conclude each of the four had committed an offense that subjected him to waiver, namely, second-degree aggravated assault, the judge denied the State's motion based on his conclusion that the State's decision to seek waiver constituted a patent and gross abuse of discretion.

During the proceeding, the judge expressed his strong disagreement with the objectives of the waiver statute, *N.J.S.A.* 2A:4A–26, and voiced his objection to what he perceived to be the statute's impact on juveniles who are waived. We conclude that the judge impermissibly allowed his personal opinions and views, and his antipathy to the waiver statute, to color his evaluation of the legal issue before him, namely, whether the Prosecutor's waiver decision constituted a patent and gross abuse of discretion. We thus reverse the orders under review, and remand for further proceedings, to be described later in this opinion.

I.

V.A., T.H., M.R. and C.T. were charged with juvenile delinquency, namely, committing acts constituting second-degree aggravat-

ed assault, *N.J.S.A.* 2C:12–1(b) (count one); first-degree robbery, *N.J.S.A.* 2C:15–1 (count two); and second-degree conspiracy to commit robbery, *N.J.S.A.* 2C:5–2/2C:15–1 (count three). The juvenile delinquency complaints stem from an assault and robbery on Omar Estrada on November 8, 2009 in Woodbridge Township. At the time of the incident, V.A., M.R. and C.T. were sixteen years of age, and T.H. was fifteen.

Estrada was walking along St. Georges Avenue when he was hit from behind. The blow to the back of his head caused him to temporarily lose consciousness and fall to the ground. While on the ground, he was kicked several times in the face, and lost two teeth as a result. Estrada felt someone remove his wallet from his pocket. The wallet was then thrown to the ground and he saw people running away.

On December 3, 2009, the State moved for waiver of all four juveniles to the Law Division, supporting each motion with a statement of reasons addressing the seven factors contained in the Attorney General's "Juvenile Waiver Guidelines" (Guidelines), issued on March 14, 2000. With the exception of the section describing each juvenile's prior record, the four statements of reasons were identical. Each starts with a detailed description of the attack on Estrada in a section entitled "Nature of Offense." As for "Deterrence," the statement of reasons explains that the "need to deter the juvenile and others from engaging in this sort of activity is abundantly clear." Next, in describing the "Effect on Co–Defendants," the State commented that "[i]n the interests of judicial efficacy and parity in sentencing, [this juvenile] and his co-defendants should be tried together in the Superior Court Criminal Division."

Addressing "Maximum Sentence," the State explained that if prosecuted in the Family Part, each juvenile would face a maximum term of ten years, whereas if prosecuted as an adult, each would face "up to forty years imprisonment" and would be subject

to the eighty-five percent parole ineligibility term required by *N.J.S.A.* 2C:43–7.2. As for "Trial Consideration[s]," the State commented on the "substantial likelihood of indictment" and the "strong likelihood of conviction," and noted that its waiver applications were "further supported by the seriousness of the crime committed, along with the need to adequately punish this offender and his co-defendants[.]" Last, the State noted in the "Victim Input" section that the "[v]ictim supports this application [for waiver]."

At the waiver hearing on March 8, 2010, the State called Detective Laughery, who summarized the details of his investigation. Detective Laughery interviewed three witnesses; none of the witnesses actually saw the attack, but the witnesses were able to place two of the juveniles, C.T. and T.H., near the scene minutes before the attack.

Laughery described the statement of James Collins, who was in the parking lot of a 7–Eleven on St. Georges Avenue when Collins was approached by T.H., who asked him for a cigarette. Collins said "no." Then, Collins overhead the group say, "Let's get that nigger now." Initially, Collins believed they were referring to him, but then Collins watched as three of them walked southbound on St. Georges Avenue with a fourth person following behind. He identified two individuals, T.H. and C.T.

Police officers went to the home of C.T. and requested that his parents voluntarily bring him to police headquarters for questioning. Initially, C.T. denied any involvement, but eventually told the police that he was with T.H., V.A. and M.R. on November 8, 2009 as they were walking on St. Georges Avenue in Woodbridge Township. According to C.T., they saw Estrada ahead of them, and T.H. said "let's go get him." C.T. told the police that T.H. hit Estrada from the side, and Estrada did not see the attack coming. Estrada fell, and T.H. continued hitting him, while V.A. and M.R. kicked him. At first, C.T. told the police he stood there while the other three attacked Estrada, but eventually C.T. conceded he "bumped" Estrada and then admitted he also kicked him twice. C.T. insisted that no one had removed Estrada's wallet.

V.A. testified at the probable cause hearing that he was with T.H., C.T. and M.R. on the night in question. V.A. watched as C.T. and M.R. "ran across the street" and approached Estrada. C.T. hit Estrada on the side of his face, and when Estrada fell to the ground, M.R. "ran up and kicked [Estrada]" two or three times in the face. V.A. testified that as he moved toward C.T. and M.R., he heard "grunts and groans."

T.H. also testified at the probable cause hearing. According to T.H., after he, V.A., C.T. and M.R. left the 7–Eleven, the other three attacked Estrada from the rear. T.H. admitted he "jumped in" and "punched the dude."

The judge issued his oral decision on October 6, 2010. He began by circulating four documents: an article entitled "The Effects on Violence of Law and Policies Facilitating the Transfer of Youth from Juvenile to Adult Justice System"; a court brief filed in the case of *In the Interest of P.M.P.*, 200 *N.J.* 166, 975 *A.*2d 441 (2009); an article by Abigail Baird, "The Emergence of Consequential Thought: Evidence of Neuroscience"; and an advertisement from Allstate Insurance Company,[1] "which has a brain with a piece out of it," and according to the judge, "graphically captures adolescence."

The judge held that the State's proofs were sufficient to establish, as to all four juveniles, probable cause for second-degree robbery and second-degree aggravated assault; however, the judge made no oral findings on the charge of second-degree conspiracy, although in the orders of disposition, he found the existence of probable cause on that charge.

The judge then evaluated the Guidelines, and as to the first factor, the nature of the offense, found that there was no death of the victim; all four juveniles were involved; there was no serious harm inflicted on the victim; and no weapon present.

---

[1] The advertisement read: "Why do most 16–year–olds drive like they're *missing a part of their brain?* BECAUSE THEY ARE."

Addressing the second factor, deterrence, the judge concluded that it was "not abundantly clear" that the juveniles were in need of deterrence. In reaching this conclusion, the judge reasoned that "people have interpreted the [waiver] statute" to mean that juveniles "with these type of charges . . . [are] not really entitled to rehabilitation." The judge observed that the part of the Guidelines [2] that addresses deterrence is unclear because deterrence is divided into two categories, general and specific, and "has to be articulated" by the State. The judge then referenced the report, "The Effects on Violence of Law and Policies Facilitating the Transfer of Youth from Juvenile to Adult Court System," and noted that the research found that "children that [are] waived into the adult court actually commit more crimes than children that don't get waived into the adult court." The judge took judicial notice of the studies contained in the report, and commented that "these kinds of studies should be reviewed by the State rather then just saying the need to deter juveniles and others from engaging in this sort of activity is abundantly clear."

Evaluating the third factor, the effect on co-defendants, the judge found that waiving juveniles to the Law Division "creates a tremendous potential for injustice," because the juveniles might be tried by four different juries, each with a different verdict.

Turning to the fourth factor, the maximum sentence and length of time to be served, the judge observed that the juveniles would "face up to 40 years imprisonment on these offenses and be subject to the No Early Release Act" if they were waived into the Law Division.

As to the fifth factor, the juvenile's prior record,[3] the judge found that M.R. and C.T. had no prior record, T.H. received

---

[2] The judge actually referred to the "statute," but because it is the Guidelines, rather than the statute, that addresses deterrence, we believe he misspoke, and meant to say "Guidelines."

[3] C.T. had an open charge for simple assault. M.R. had no prior record. T.H. had received one year of probation for a second-degree aggravated assault. V.A.

probation for a prior aggravated assault, and V.A. received proba-
tion for a prior assault and endangering the welfare of a child. He
concluded that T.H. and V.A.'s prior record did not "enter into a
decision to move the matter into the adult court."

With the sixth factor, trial considerations, the judge noted that
there "were a lot of trial considerations raised by the juveniles"
regarding *Miranda*[4] and *Bruton.*[5]

The judge then concluded that the State's waiver motion was
"void of any substantive reasons" and "there [was] nothing stated
in the reasons by the prosecutor ... [explaining] why [the juve-
niles] ha[d] to go to the adult court." The judge continued:

> I would like to assert other serious consequences that result in a waiver decision,
> and I find that these are anticipated and should be considered by a court when
> making a decision about waiving a juvenile into the adult court. And if the Court is
> not, I say if the Court is not allowed to consider these things at a probable cause
> hearing, then I find that there is clearly a separation of powers issue, [and] that
> would give total carte blanche to the executive branch to the prosecutor, and I find
> that cannot be the case.

The "serious consequences" mentioned by the judge included:
the juveniles losing the right to vote, the right to enlist in the
armed forces, the ability to run for public office, the opportunity to
attain certain professional licenses and to serve as jurors. The
judge criticized the waiver statute, as it both caused the "juveniles
[to be] stripped of their inalienable rights of life, liberty and the
pursuit of happiness," and removed the protective role of the
Family Court.

The judge then turned to an evaluation of whether the Prosecu-
tor's decision to seek waiver was so wide of the mark that
fundamental fairness required judicial intervention. He concluded
that the Prosecutor's decision to waive the four juveniles was a

---

had received one year of probation for a simple assault and a three-year
probationary term for endangering the welfare of a child.

4 *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

5 *Bruton v. United States,* 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968).

"patent and gross abuse of power" because the Prosecutor's discussion of the Guidelines in each of the four statements of reasons was not "articulated or delineated sufficiently to satisfy [the court]." He also commented that the Prosecutor should have conducted a "risk assessment" to determine each juvenile's "potential for danger." In conclusion, the judge observed that although the juveniles had engaged in conduct that was "very bad," they were nonetheless entitled to protection and his decision was an "attempt . . . to exercise those protections."

Accordingly, by orders of October 13, 2010, the judge denied the State's waiver motions and held that V.A., M.R., C.T. and T.H. would be tried as juveniles. On November 18, 2010, we granted the State's motion for leave to appeal, as well as the State's motion to consolidate the four appeals. On January 5, 2011, we permitted the State to supplement the record on appeal with a March 24, 2010 written opinion by the same judge in four unrelated juvenile matters in which the judge had denied the State's waiver motions.[6]

On appeal, the State argues:

THE STATE ESTABLISHED PROBABLE CAUSE ON ALL OF THE CHARGED OFFENSES AND V.A., M.R. AND C.T. FAILED TO PROVE TH[A]T THE PROSECUTOR'S WAIVER DECISION WAS A PATENT AND GROSS ABUSE OF DISCRETION; THE TRIAL COURT'S RULINGS IN FAVOR OF THE JUVENILES ARE THE RESULT OF THE TRIAL COURT'S EXPRESS BIAS AGAINST THE JUVENILE WAIVER STATUTE.

II.

The decision whether to grant the State's waiver application is "the single most serious act that the juvenile court can perform." *State in the Interest of A.D.*, 420 *N.J.Super.* 144, 155, 19 *A.*3d 482 (App.Div.2011) (citation omitted). A trial court's waiver decision is reviewed under an abuse of discretion standard.

---

[6] In an opinion filed on June 7, 2011, we reversed the judge's denial of the State's waiver motions in those four cases, concluding that the "trial court permitted its personal views to affect its legal analysis[.]" *State in the Interest of J.M., A.M., L.L. and C.S.*, Docket Nos. A–2563–09, A–2564–09, A–2565–09 and A–2566–09, 2011 *WL* 2315126 (App.Div. June 7, 2011) (slip op. at 9).

*Ibid.* However, if the judge " 'acts under a misconception of the applicable law,' " we need not afford the decision such deference. *State in the Interest of T.M.*, 412 *N.J.Super.* 225, 231, 989 *A.*2d 302 (App.Div.2010) (quoting *State v. Brown*, 118 *N.J.* 595, 604, 573 *A.*2d 886 (1990)).

A juvenile will be waived to the Law Division for prosecution as an adult if there is probable cause to believe that the juvenile committed one of the violent crimes enumerated in *N.J.S.A.* 2A:4A–26(a)(2), and the juvenile is sixteen years of age or older. *State v. J.M.*, 182 *N.J.* 402, 411–12, 866 *A.*2d 178 (2005). Juveniles who are between fourteen and sixteen years of age are entitled to the additional protection of a hearing at which the juvenile can avoid waiver by showing that the probability of his rehabilitation prior to reaching the age of nineteen "substantially outweighs the reasons for waiver." *N.J.S.A.* 2A:4A–26(e).

In relevant part, the waiver statute provides:

a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:

(1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and

(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:

(a) ... robbery which would constitute a crime of the first degree, ... [or] aggravated assault which would constitute a crime of the second degree[.]

. . . .

e. If the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. *This subsection shall not apply with respect to a juvenile 16 years of age or older who is charged with committing any of the acts enumerated in subparagraph (a)* [.]

[*N.J.S.A.* 2A:4A–26 (emphasis added).]

The County Prosecutor is vested "with the primary responsibility for juvenile waiver decisions when the juvenile is sixteen years or older and charged with a designated offense," because such decision is made "without regard to rehabilitative

evidence." *J.M., supra,* 182 *N.J.* at 412, 866 *A.*2d 178. Consistent with the Attorney General's Guidelines, the Prosecutor "must submit a written statement of reasons for waiver." *State v. Read,* 397 *N.J.Super.* 598, 605, 938 *A.*2d 953 (App.Div.), (citing *State in the Interest of R.C.,* 351 *N.J.Super.* 248, 256–59, 798 *A.*2d 111 (App.Div.2002)), *certif. denied,* 196 *N.J.* 85, 951 *A.*2d 1038 (2008). The Prosecutor is obliged to consider:

(1) the nature of the offense; (2) deterrence; (3) the effect on co-defendants of waiver to adult court; (4) the maximum sentences that could be imposed under the juvenile or criminal codes and the amount of time likely to be served; (5) the juvenile's prior record; (6) trial considerations—that is, the likelihood of conviction and potential need for grand jury investigation; and (7) victim input.

[*Id.* at 605, 938 *A.*2d 953 (citing *Attorney General's Juvenile Waiver Guidelines* (March 14, 2000)).]

The Guidelines are based "primarily on objective factors, such as the nature of the offense, rather than subjective factors, such as the juvenile's individual characteristics." *Guidelines, supra,* at 4. The Prosecutor should not consider factors other than those set forth in the Guidelines. *Read, supra,* 397 *N.J.Super.* at 606, 938 *A.*2d 953. Comparing the juvenile waiver guidelines to those applicable in other contexts, we observed in *R.C.,* that the Guidelines for juvenile waiver decisions are designed to " 'promote uniformity and provide a means for prosecutors to avoid arbitrary or abusive exercise of discretionary power.' " *R.C., supra,* 351 *N.J.Super.* at 256–57, 798 *A.*2d 111 (quoting *State v. Lagares,* 127 *N.J.* 20, 32, 601 *A.*2d 698 (1992)).

Although a Prosecutor's reasons for waiving a juvenile are subject to judicial review, a trial judge must afford a Prosecutor's waiver decision considerable deference. *Id.* at 260, 798 *A.*2d 111. Indeed, the Prosecutor's waiver decision must be evaluated in the same deferential manner as the review of a Prosecutor's refusal to consent to a defendant's admission into a Pretrial Intervention (PTI) program. *Id.* at 259, 798 *A.*2d 111. The Prosecutor's decision to waive a juvenile must be upheld unless it constitutes a patent and gross abuse of discretion. *Id.* at 260, 798 *A.*2d 111.

"A patent and gross abuse of discretion is more than just an abuse of discretion as traditionally conceived"; rather, the decision must be "so wide of the mark ... that fundamental fairness and justice require judicial intervention." *State v. Wallace*, 146 *N.J.* 576, 582–83, 684 *A.*2d 1355 (1996) (discussing the standard for judicial review in the PTI context) (internal quotation marks and citation omitted). Therefore, the Family Part should grant the waiver motion unless the juvenile is able to "show by clear and convincing evidence that the decision constituted a patent and gross abuse of discretion." *R.C., supra,* 351 *N.J.Super.* at 251, 798 *A.*2d 111.

Here, the judge found that the State established probable cause on three charges: second-degree robbery, second-degree aggravated assault, and second-degree conspiracy. Pursuant to *N.J.S.A.* 2A:4A–26(a), V.A., C.T. and M.R., who were age sixteen, should have been waived to the Law Division because probable cause existed for second-degree aggravated assault, one of the offenses for which waiver is automatic when the juvenile is sixteen years of age at the time of the offense, unless the juvenile proves by clear and convincing evidence that the Prosecutor's decision was a patent and gross abuse of discretion. *R.C., supra,* 351 *N.J.Super.* at 251, 798 *A.*2d 111. T.H. was entitled to a rehabilitation hearing because he was younger than sixteen at the time of the offense. *N.J.S.A.* 2A:4A–26(e). Thus, the issue on appeal is whether the judge erred when he determined that the Prosecutor's decision constituted a patent and gross abuse of discretion.

The State argues that the judge allowed his personal opinion about the waiver statute to override his obligation to conduct a reasoned analysis of its waiver motion. The State also argues that the written statement of reasons it provided for each juvenile appropriately addressed each of the seven factors required by the Guidelines. The juveniles disagree, arguing that the judge's decision was correct.

Turning to the judge's findings, we conclude that he did not explain how V.A., T.H., C.T. and M.R. demonstrated by clear

and convincing evidence that the Prosecutor's waiver decision constituted a patent and gross abuse of discretion. Instead, the judge impermissibly used the Guidelines as a springboard from which to opine that the Prosecutor's application for waiver was "void of any substantive reasons." First, the judge criticized the Prosecutor's statement of reasons because the Prosecutor did not consider factors the judge deemed important, even though those factors are not contained in the Guidelines. The judge commented that the reasons submitted by the Prosecutor did not consider the "serious consequences" (loss of the right to vote, for example), that each juvenile would face if waived to adult court and thereafter convicted. The judge also stated that if he were not permitted to consider these consequences, a serious separation of powers problem would result.

The judge's reasoning was flawed. A Prosecutor is prohibited from applying factors that are not set forth in the Guidelines. *Read, supra,* 397 *N.J.Super.* at 606, 938 *A.*2d 953. Indeed, as we observed in *Read,* "[i]t would be inconsistent with th[e] legislative objective of uniform statewide application for an individual prosecutor to apply factors that are not set forth in the Attorney General's Guidelines in determining whether to waive a juvenile complaint to adult court." *Ibid.* Thus, the judge's critique of the Prosecutor's failure to consider these potential collateral consequences of waiver was itself based on a misapprehension of the governing legal principles.

The same is true of the judge's conclusion that the State's failure to conduct a risk assessment of each juvenile was a fatal flaw in the State's waiver request. The Guidelines impose no such requirement. Thus, because the State is not entitled to consider factors not contained in the Guidelines, *ibid.,* the judge erred when he concluded that the State's failure to conduct a risk assessment was further evidence of the State's patent and gross abuse of discretion.

Third, the judge incorrectly expected the Prosecutor to differentiate between general deterrence and specific deter-

rence. A Prosecutor's reasons for waiving a juvenile to the Law Division should be based upon objective factors, not subjective factors. *See Guidelines, supra,* at 4 (instructing that the Prosecutor's decision "rests primarily on objective factors, such as the nature of the offense, rather than subjective factors, such as the juvenile's individual characteristics"). The judge's insistence that the Prosecutor "articulate" specific deterrence as it relates to each juvenile would require the Prosecutor to improperly consider "individual characteristics" of the juvenile, which is contrary to the express provisions of the Guidelines. Thus, the judge's conclusion that the Prosecutor's failure to differentiate between general deterrence and specific deterrence rendered the State's waiver decision an abuse of discretion, again constitutes a mistaken application of the governing legal principles.

Fourth, the judge incorrectly considered the very process by which the State had reached the decision to seek waiver. After noting that there had recently been a "dramatic improvement[ ]" in the ability of experts to assess the risk that a juvenile will re-offend, the judge chastised the State for failing to avail itself of such scientific research and techniques, calling the Prosecutor or assistant prosecutors who had made the waiver decision "legal cavemen." The judge stated:

> Now, there's been dramatic improvements in assessments ... and we're still analyzing cases by a couple of prosecutors sitting in a room and making some kind of decision and I'm supposed to accept that? I don't accept it.... I'm trying to think [of] what I might call that. It is like being a legal caveman[.]

The judge's rejection of the Prosecutor's waiver decision because that decision was not science-based, but was instead the product of lawyers analyzing the facts and the law, is yet another deviation from the standard of review the judge should have applied.

Fifth, the judge improperly injected his personal beliefs about the waiver statute into his decision. At the status conference for each juvenile, long before the probable cause hearing was held, the judge expressed his vehement opposition to the waiver of juveniles. At V.A.'s status conference, for example, the judge expressed the opinion that juveniles who have been involved with

the Division of Youth and Family Services should not be waived to adult court. He also remarked, "We don't get a very good return on our dollar because these children commit even more serious crimes when they are waived and they commit more of them."

At C.T.'s status conference, the judge stated he wanted to "make the record clear" that the prosecutor "shouldn't be waiving these kids into [adult] court." The judge acknowledged that he has "no control over that by the way the statute is written," but he nonetheless believed that waiver "is just wrong."

Additionally, at M.R.'s status conference, the judge stated that he was "trying to make a record, a historical record" because "we have to stop waiving [these] children as first offenders." He explained that "data indicates that all you get out of [waiving juveniles] is more crime and more serious crime[,]" and "at some point this nonsense has got to stop." He asserted:

> [W]e all have our jobs, I understand the prosecutor's job. You know, I understand their position, ... but I'm not going to sit by quietly.... [T]his is wrong. It's just wrong to waive a child like that. The prosecutor should know it. Hope you tell him.

The State also points to statements made by the judge in his March 24, 2010 written opinion in the four appeals that were the subject of our January 5, 2011 supplementation order. There, the judge expressed his opinion that the juvenile waiver statute is bad public policy, does not rehabilitate juveniles, vests too much discretion with the State, violates the separation of powers, and prevents the family court from fulfilling its function of protecting juveniles. The State maintains that these statements, both individually and cumulatively, demonstrate that the judge's "impartiality was compromised."

We recently addressed an instance where a judge's personal opinion and sentiments about an issue interfered with the judge's impartial discharge of his judicial responsibilities, *State v. Tindell,* 417 *N.J.Super.* 530, 571–72, 10 *A.*3d 1203 (App.Div.2011). We observed that "judges are not immune from having strong feelings about such matters[,]" but judges "are charged with the

great responsibility of administering our criminal justice system in a fair, rational, and impartial manner." *Id.* at 571, 10 *A.*3d 1203. When a judge "permit[s] his or her sense of moral outrage and indignation to overwhelm the legal process," we are obliged to reverse the decision in question. *Ibid.* Trial judges must "be guided exclusively by the factors established by law and not by the judge's personal code of conduct." *Ibid.*

The record before us in the present consolidated appeals demonstrates the judge's pervasive hostility to the philosophy and procedures of the juvenile waiver statute. The judge has also ignored the legal principles governing juvenile waiver motions and insisted upon including his own factors for consideration. While a judge is entitled to his personal opinion on an issue, he is not entitled to permit his personal views to "overwhelm the legal process." *Ibid.* The judge's comments here demonstrate that his decision was the product of his "personal code of conduct" and not "the factors established by law[.]" *Ibid.*

As we have already noted, we review a trial judge's waiver decision for an abuse of discretion, *A.D., supra,* 420 *N.J.Super.* at 155–56, 19 *A.*3d 482, but we will not afford the decision such deference if it results from a misconception, or misapplication, of the governing legal principles. *T.M., supra,* 412 *N.J.Super.* at 231, 989 *A.*2d 302. Here, apart from the errors we have already discussed, the judge mistakenly determined that he was entitled to reject the Prosecutor's waiver motion unless it was supported by a justification for waiver over and above the factors the State had already articulated in the statement of reasons. Quite simply, the judge misapplied the law when he so found. *J.M., supra,* 182 *N.J.* at 411–12, 866 *A.*2d 178. For all of these reasons, we reject the judge's conclusion that the State's decision to waive these four juveniles was the result of a patent and gross abuse of discretion.

Absent an abuse of prosecutorial discretion, which was not present here, *N.J.S.A.* 2A:4A–26(a) required the immediate waiver of the juvenile complaints against V.A., C.T. and M.R. to the Law Division as each was sixteen years of age or older and there was

probable cause to conclude that each had committed a qualifying offense, namely second-degree aggravated assault. *Ibid.* The fourth juvenile, T.H., who was less than sixteen at the relevant time, is entitled to the opportunity to prove that "the probability of his rehabilitation ... substantially outweighs the reasons for waiver" and if he does so, he will be entitled to remain in the Family Part. *N.J.S.A.* 2A:4A–26(e).

As to V.A., M.R. and C.T., we reverse the orders of October 13, 2010 and remand for the entry of orders requiring the waiver of these three juveniles to the Law Division for prosecution as adults. T.H., who was less than sixteen years of age at the relevant time, is entitled to a rehabilitation hearing. In light of the strong views expressed by the trial judge with respect to waiver applications, we direct this hearing under *Rule* 5:22–2(c)(2) be conducted by a different judge. *Tindell, supra,* 417 *N.J.Super.* at 572, 10 *A.*3d 1203.

Reversed and remanded.