50 A.3d 610

STATE OF NEW JERSEY IN THE INTEREST OF V.A., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF T.H., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF C.T., A MINOR.

STATE OF NEW JERSEY IN THE INTEREST OF M.R., A MINOR.

Argued April 24, 2012—Decided September 12, 2012.

2

6

*Lon C. Taylor,* Assistant Deputy Public Defender, argued the cause for appellant C.T. (*Joseph E. Krakora,* Public Defender, attorney; Mr. *Taylor* and *Joel A. Friedman,* Designated Counsel, on the briefs).

*Patrick C. O'Hara, Jr.,* Designated Counsel, argued the cause for appellant V.A. (*Joseph E. Krakora,* Public Defender, attorney).

*William M. Fetky,* Designated Counsel, argued the cause for appellant M.R. (*Joseph E. Krakora,* Public Defender, attorney).

*Nancy A. Hulett,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney).

*Laura A. Cohen* argued the cause for amici curiae American Civil Liberties Union of New Jersey Foundation, Advocates for

Children of New Jersey, Association of Criminal Defense Lawyers of New Jersey, W. Haywood Burns Institute, Campaign for the Fair Sentencing of Youth, Campaign for Youth Justice, Center for Children's Law and Policy, Center for the Promotion of Mental Health in Juvenile Justice, Dean Todd Clear, Dean John J. Farmer, Jr., Dean Robert L. Johnson, Juvenile Law Center, Latino Leadership Alliance of New Jersey, National Association of Counsel for Children, National Association of Social Workers, National Association of Social Workers–New Jersey Chapter, National Center for Youth Law, National Juvenile Defender Center, New Jersey Institute for Social Justice, New Jersey State Conference of NAACP, Northeast Juvenile Defender Center, Rutgers School of Law–Camden Children's Justice Clinic, Rutgers Urban Legal Clinic, Rutgers School of Law–Newark, and Youth Law Center (*New Jersey Institute for Social Justice* and *Rutgers Urban Legal Clinic, Rutgers School of Law–Newark,* attorneys; *Craig R. Levine,* of counsel; *Ms. Cohen, Mr. Levine, Corey W. Parson,* a member of the California and New York bars, and *Marsha L. Levick,* a member of the Pennsylvania bar, on the brief).

*Jeanne Screen,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Jeffrey S. Chiesa,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal we review a decision by a county prosecutor to seek waiver of three juveniles, aged sixteen at the time of their offenses, to adult court for acts of delinquency that, as charged, were equivalent to aggravated assault, robbery, and second-degree conspiracy. A Family Part judge found probable cause that the juveniles committed the offenses but denied the waiver motion. The Appellate Division reversed, concluding that the Family Part overstepped its bounds. *State ex rel. V.A.,* 420 *N.J.Super.* 302, 21 *A.*3d 619 (App.Div.2011). In this matter, we are called on chiefly to address the standard of review to be exercised by a court reviewing such motions for waiver.

In 2000, the Legislature eased the conditions of waiver for juveniles, aged sixteen and over, who are charged with certain serious offenses, as were the juveniles here. *See N.J.S.A.* 2A:4A–26(a), (e). While a prosecutor's decision to seek waiver of such juveniles is discretionary, the Legislature directed the Attorney General to issue guidelines for prosecutors to promote uniformity, thereby preventing arbitrary exercise of that discretionary authority. *N.J.S.A.* 2A:4A–26(f); *see State v. J.M.*, 182 *N.J.* 402, 419, 866 *A.*2d 178 (2005) (observing that guidelines advance legislative goal of uniformity through avoidance of arbitrariness and abuse of discretion). Guidelines issued by the Attorney General identify the factors that prosecutors are to address in a statement of reasons to support such waiver decisions, *see Attorney General's Juvenile Waiver Guidelines* (Mar. 14, 2000) (hereinafter *Guidelines*), and we require submission of the statement of reasons with a motion seeking waiver, *J.M., supra,* 182 *N.J.* at 419, 866 *A.*2d 178.

In a court's review of waiver motions carrying such serious consequences for the juvenile who is waived up to adult proceedings, we hold that the abuse of discretion standard applies. The abuse of discretion standard is appropriately deferential to the prosecutor's decision to seek waiver when the statutory conditions are present while simultaneously acting to curb arbitrariness and the abuse of discretionary authority, thereby promoting the legislative interest in uniformity.

An abuse of discretion review does not allow the court to substitute its judgment for that of the prosecutor. Rather, a review for abuse of discretion involves a limited but nonetheless substantive review to ensure that the prosecutor's individualized decision about the juvenile before the court, as set forth in the statement of reasons, is not arbitrary or abusive of the considerable discretion allowed to the prosecutor by statute. Cursory or conclusory statements as justification for waiver will not suffice to allow the court to perform its review under the abuse of discretion standard because such statements provide no meaningful explana-

tion of the prosecutor's reasoning. Applying that standard, we further hold that, in the instant matter, the prosecutor's explanation in the Statements of Reasons was, in certain respects, lacking in detail. Therefore, we reverse and remand for a more full explanation by the prosecutor as detailed herein.

I.

Ordinarily we would begin with a recitation of the underlying facts and procedural history to the charges at the center of the waiver determination on appeal. However, in this instance, we find it more conducive to begin with the statutory provisions governing the juvenile waiver process in order to appreciate the arguments about the sufficiency of the prosecutor's waiver application in this matter.

In its current form, *N.J.S.A.* 2A:4A–26 provides:

a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:

(1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and

(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute [one or more of the following types of enumerated offenses].

. . . .

d. A motion seeking waiver shall be filed by the prosecutor within 30 days of receipt of the complaint. This time limit shall not, except for good cause shown, be extended.

e. If the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. This subsection shall not apply with respect to a juvenile 16 years of age or older who is charged with committing any of the acts enumerated. . . .

f. The Attorney General shall develop for dissemination to the county prosecutors those guidelines or directives deemed necessary or appropriate to ensure the uniform application of this section throughout the State.

The history of amendments to the juvenile waiver statute is well known, having been recounted in previous decisions of this Court. *See J.M., supra,* 182 *N.J.* at 411–12, 866 *A.*2d 178; *State v. R.G.D.,*

108 *N.J.* 1, 4–15, 527 *A.*2d 834 (1987). Generally, the Legislature has moved in one direction: easing the conditions for waiver for the State, and concomitantly rendering it more difficult for the juvenile to avoid waiver of jurisdiction by the Family Part. *J.M.,* *supra,* 182 *N.J.* at 412, 866 *A.*2d 178. The most significant alteration in that respect was accomplished by the amendments made effective in 2000 that eliminated the opportunity for a juvenile aged sixteen and over, who is charged with the most serious offenses, to demonstrate to the Family Court that he or she can be rehabilitated by the age of nineteen through programs available in the juvenile justice system and thereby defeat a waiver motion. *L.* 1999, *c.* 373. Under the current statute, once the State has established probable cause that a juvenile committed an act equivalent to an enumerated offense, waiver is required and the juvenile is denied the opportunity to present rehabilitation evidence. *See J.M., supra,* 182 *N.J.* at 412, 866 *A.*2d 178. As summarized in *J.M.,* "the Legislature vested the prosecutor's office with the primary responsibility for juvenile waiver decisions when the juvenile is sixteen years or older and charged with a designated offense. The intent was to increase prosecutorial discretion and to make waiver more likely in the case of those juveniles." *Ibid.*

That said, the Legislature added subsection f, directing the Attorney General to issue guidelines to ensure statewide the uniform application of this new prosecutorial discretion and thereby "eliminate arbitrariness or abuse of discretionary power." *Id.* at 419, 866 *A.*2d 178 (citing *State ex rel. R.C.,* 351 *N.J.Super.* 248, 257, 798 *A.*2d 111 (App.Div.2002)). The Attorney General promulgated "Juvenile Waiver Guidelines," effective March 14, 2000. *See Guidelines, supra.* Those Guidelines explain that several models governing the use of discretion were considered during the Attorney General's deliberations on their development. *Guidelines, supra,* at 4. The Pre–Trial Intervention admission guidelines were identified as particularly useful, but, as finalized, the Guidelines were fashioned "to account for the differences between the goals of PTI admission and waiver to adult court." *Ibid.* The narrative

accompanying the operative language of the Guidelines states that, in the exercise of discretion in juvenile waiver decisions, "due to the seriousness of the offenses involved, the prosecutor's decision in these waiver cases rests primarily on objective factors, such as the nature of the offense, rather than subjective factors, such as the juvenile's individual characteristics." *Ibid.*

The Guidelines direct prosecutors to take specified factors into account when determining whether to file a juvenile waiver motion, and identify what facts the prosecutor must consider as to each, stating as follows:

**1. Nature of the Offense**

The prosecutor shall consider the nature of the offense, including:

1. The death of a victim during the course of the offense;

2. The nature and circumstances of the act;

3. The role of the juvenile therein;

4. The fact that there was grave and serious harm inflicted on the victim or the community;

5. The potential for grave and serious harm to the victim or the community; and

6. The use or possession of a weapon during the course of the offense.

**2. Deterrence**

The prosecutor shall consider the need for deterring the juvenile and others from violating the law.

**3. Effect on Co–Defendants**

The prosecutor shall consider the effect of waiver on the prosecution of any co-defendants, juvenile or adult, so as to avoid an injustice if similarly situated culpable individuals are tried in separate trials.

**4. Maximum Sentence and Length of Time Served**

The prosecutor shall consider and compare the maximum sentences that may be imposed under the juvenile or criminal codes and the amount of time likely to be served. Furthermore, the prosecutor may consider the likely effect on the amount of time served by the juvenile of enhanced sentencing provisions, such as the extended term provisions of the juvenile code contained in *N.J.S.A.* 2A:4A–44, the No Early Release Act, the Graves Act or any other mandatory or enhanced dispositions or sentences.

**5. Prior Record**

The prosecutor shall consider the juvenile's prior record, including:

1. The seriousness of any acts for which the juvenile has been adjudicated delinquent;

2. Any offenses for which the juvenile has been waived and convicted as an adult;

3. Any involvement of the juvenile with a gang; and

4. The history of the use of physical violence toward others and the extent to which the juvenile may present a substantial danger to others.

**6. Trial Considerations**

The prosecutor shall consider the likelihood of conviction and the potential need for a grand jury investigation.

**7. Victim's Input**

If there is an identifiable victim, the prosecutor should confer with the victim or victim's family regarding the victim's input on the waiver decision. However, the waiver decision rests with the prosecutor, not the victim.

[*Guidelines, supra*, at 5–6.]

The Guidelines require preparation of a written statement of reasons for waiver, in which the prosecutor must "include an account of all factors considered and deemed applicable." *Guidelines, supra*, at 7. We further determined that, in order for the Family Part to be able "to determine that the [prosecutor's] reasons for seeking waiver are not arbitrary," the statement must be submitted to the court with the motion for waiver. *J.M., supra*, 182 *N.J.* at 419, 866 *A.*2d 178. Such a statement of reasons was submitted in this matter and the Family Court's and Appellate Division's review of that provides us with the grist for the main legal issue before us, namely to identify the proper standard of review for a waiver application. We therefore turn to the facts and procedural history in this matter.

## II.

### A.

On the evening of November 8, 2009, Omar Estrada was walking down St. Georges Avenue in Woodbridge Township when he was struck on the back of the head from behind. He lost consciousness and fell to the ground. While on the ground, he was kicked several times in the face. He felt someone remove his wallet from his pocket and throw it to the ground. As a result of the attack, Estrada lost two teeth. He was unable to identify who attacked him, but stated that he saw two people running away.

In connection with that attack, V.A., M.R., C.T., and T.H. were charged with acts of juvenile delinquency equivalent to second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b); first-degree robbery, *N.J.S.A.* 2C:15–1; and second-degree conspiracy, *N.J.S.A.* 2C:5–2.[1] At the time of the offense, V.A., M.R., and C.T. were at least sixteen years old. T.H. was fifteen years of age at the time of the offense.

The State filed motions to have the Family Part waive jurisdiction as to all four juveniles and to transfer jurisdiction to the Law Division, Criminal Part. The State submitted a "STATEMENT OF REASONS FOR WAIVER MOTION" for each juvenile; however, the four Statements of Reasons were virtually identical to one another with the exception of the section detailing each juvenile's prior record. Therefore discussion of the Statements is combined into one recitation.

For the first factor—the nature of the offense—the State recounted the events that led to the delinquency charges. This section described all participants' actions in one narrative. That omnibus description detailed what each juvenile did during the attack on Estrada, and also recited statements by one participant that were heard either by witnesses or revealed by C.T. in a voluntary statement to a detective. In sum, this section provides considerable detail about the juveniles' actions leading up to, during, and after the assault on Estrada.

---

[1] The conspiracy charge as to each was described in the complaints as follows: "[T]he defendant committed the crime of Conspiracy by knowingly and purposely conspiring with above Co–Defendants to take victim[']s Wallet out of his pocket during Aggravated Assault." At the probable-cause hearing, the State maintained that defendants were charged with "one count of second degree conspiracy to commit robbery," and directed its line of questioning to establish probable cause for that crime. However, in the court's probable cause and waiver decision issued October 6, 2010, the court stated that defendants were charged with "conspiracy to commit aggravated assault in the second degree" and found probable cause that the co-defendants conspired to commit aggravated assault.

In addressing the Guidelines' second factor, requiring an evaluation of deterrence, the State recited the same simple, declarative sentence for each juvenile: "The need to deter the juvenile and others from engaging in this sort of activity is abundantly clear."

The Guidelines' third factor requires an evaluation of the effect that waiver will have on co-defendants. Again, here, the explanation for each juvenile was the same: Because all four defendants were juveniles, "[i]n the interests of judicial efficacy and parity in sentencing," they should be tried together in the Law Division.

The fourth factor addresses the maximum sentence to be faced if jurisdiction over the juvenile is waived to adult court. The Statement for each of these juveniles noted that the youth would face a maximum of ten years in the Juvenile Justice Commission if adjudicated as a juvenile but, if prosecuted and convicted as an adult, would face a forty-year maximum term of imprisonment, subject to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2.

The fifth factor involves an assessment of the juvenile's prior record. These juveniles' prior records were recounted in individualized fashion, without further elaboration or analysis.

Next, the State addressed the trial considerations involved in deciding whether to waive these juveniles, stating for each that

[t]his application is supported by the substantial likelihood of indictment by a Grand Jury on these charges, and a strong likelihood of conviction. This application is further supported by the seriousness of the crime committed, along with the need to adequately punish this offender and his co-defendants upon a finding of guilt.

Finally, regarding the victim's input into the waiver determination, the prosecutor stated for each juvenile that the "[v]ictim supports this application."

### B.

The Family Court conducted a status conference and a probable cause hearing before rendering its decision denying the waiver applications.

At the probable cause hearing, a Woodbridge detective testified about the investigation into the attack on Estrada. His testimony

dovetailed substantively with the account of the assault in the Statements of Reasons. In essence, he stated that shortly after the attack on Estrada, officers interviewed three witnesses. Although none saw the attack as it occurred, one witness saw C.T. and another person—recognized but not identified by name—walking with two others on St. Georges Avenue near to where the crime occurred, a few minutes before the incident. Another witness, who also identified C.T., overheard someone in the group of four say: "Let's get that n* * * *r now." That second witness was able to identify T.H.—as the "other person" who could not be identified by name—by looking through a high school yearbook. A third witness provided a similar account.

The detective also described C.T.'s interview, in which C.T. stated that on the night of Estrada's assault he was with T.H., V.A., and M.R. on St. Georges Avenue. He claimed that they saw Estrada and that T.H. said, "hit him, let's go get him." According to C.T., T.H. was the first to hit Estrada. Then T.H., V.A., and M.R. kicked Estrada after he fell to the ground. Although C.T. at first denied attacking Estrada, he eventually admitted that he also kicked Estrada twice. He denied that anyone removed Estrada's wallet.

V.A. and T.H. also testified at the probable cause hearing. V.A. admitted that he was with the other three co-defendants the night of the incident, but said that he only watched as C.T. and M.R. approached Estrada and hit and kicked him a number of times. He claimed to have run from the scene. T.H., on the other hand, admitted that he "punch[ed]" Estrada. His testimony corroborated V.A.'s claim that when Estrada was being assaulted by the others, V.A. ran away and was not involved. T.H. also said that no one took Estrada's wallet.

The Family Court allowed post-testimony briefing and on October 6, 2010, issued its decision on the waiver application.[2] In

---

[2] The court's decision relied on materials that were not part of the record. Before delivering its decision the court distributed copies of the articles and

addressing whether probable cause was present, the court did not differentiate among the juveniles. It found that they were all involved. The court found no probable cause for a first-degree robbery charge, but found probable cause for a "strong arm robbery," which constitutes a second-degree offense. The court also found probable cause for second-degree aggravated assault under an attempt theory, and "conspiracy to commit aggravated assault in the second degree."

Having determined that probable cause existed for enumerated offenses that made the juveniles who were over the age of sixteen eligible to be waived to adult court under *N.J.S.A.* 2A:4A–26(a), without the right to present rehabilitative evidence, *see N.J.S.A.* 2A:4A–26(e), the trial court then turned to review the prosecutor's reasons for the decision to seek waiver in this matter. Relying on the factors identified in the Attorney General's Guidelines to review the prosecutor's exercise of discretion in respect of these juveniles, what ensued was the equivalent of a re-examination by the court of the Guidelines' factors.

As to the nature of the offense, the court examined each factual matter that the Guidelines specified for review, noting that: no death occurred; "the nature and circumstances of a strong arm robbery" existed; all four juveniles were involved in the incident; although there was a potential for harm, there was no grave and serious harm to the victim; and no weapon was used in the crime.

The trial court evaluated the deterrence factor by relying on a report entitled, "The Effects on Violence of Laws and Policies Facilitating the Transfer of Youth from Juvenile to Adult Court System," and found generally that juveniles are less amenable to

---

similar non-record information that it used in reaching its determination. Those materials included "The Effects on Violence of Laws and Policies Facilitating the Transfer of Youth from Juvenile to Adult Justice System," a court brief filed in a juvenile case that dealt with adolescent brain development, an Abigail Baird article entitled "The Emergence of Consequential Thought: Evidence of Neuroscience," and "a copy of an ad from Allstate, which has a brain with a piece out of it, which [in the judge's opinion,] graphically captures adolescence."

deterrence and that juveniles waived into adult court are more likely to commit violent crimes. The court stated that the State should have taken into account those general deterrence considerations when assessing the deterrence value to be achieved through waiver of juveniles to adult court, in addition to assessing the value of individual deterrence to be achieved in this matter. In essence, the court viewed the deterrence assessment performed here as conclusory and inadequate.

Regarding the effect on co-defendants, the court found that that factor weighed against waiver chiefly because the court was of the view that these co-defendants could not be tried together in adult criminal court without violating *Bruton v. United States*, 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.*2d 476 (1968), and therefore that the only way all co-defendants could appear together was before the same Family Part judge.

The court noted the lengthier sentences that would be imposed in adult court, including the presumption of incarceration and NERA parole ineligibility. And, in respect of the juveniles' prior criminal histories, the court observed that C.T. and M.R. had no prior records, that T.H. had a prior conviction for conduct equivalent to aggravated assault, and that V.A. had prior convictions equivalent to aggravated assault [3] and endangering the welfare of a child. The court categorized those histories as not "extensive" and not favorably contributing to the waiver decision.

As to trial considerations, the court found that "nothing stated in the reasons by the prosecutor [explained] why, using trial considerations, [the case] has to go to the adult court." The court did not comment on the victim-input factor.

In sum, in the court's view, our earlier decision in *J.M.* anticipated that a reviewing family court would undertake a "careful analysis" of the Guidelines. The court performed its assessment

---

[3] At the December 10, 2009, status conference for V.A., defendant's counsel claimed that V.A.'s prior adjudication was for simple assault. In its statement of reasons for waiver, the State also notes that V.A.'s prior adjudication was for "Disorderly Persons Simple Assault."

with that in mind. In the course of explaining its decision, the court expressed disagreement with policy aspects of the juvenile waiver statute and the long-term impact of adult convictions on a juvenile's record, among other related concerns. The court concluded that the prosecutor's decisions to waive these juveniles constituted an abuse of discretion, rising to the level of patent and gross abuse of discretion, which it considered applicable in its review. The court therefore denied the State's motions for waiver, but stayed its ruling pending an appeal by the State.

C.

The Appellate Division granted the State leave to appeal in all four cases, consolidated the appeals, and permitted the State to supplement the record with evidence about the trial judge's handling of other juvenile waiver applications in which the judge's bias against waiver was allegedly demonstrated. Because there is no need to detail in its entirety the panel's criticism of the now-retired judge's approach to juvenile waivers, suffice it to say that, ultimately, the Appellate Division reversed the trial court. *V.A.*, *supra*, 420 *N.J.Super.* at 302, 21 *A.*3d 619. Although recognizing the gravity of the decision to seek waiver, the panel's opinion stressed the Legislature's intent to vest the prosecutor " 'with the primary responsibility for juvenile waiver decisions.' " *Id.* at 314, 21 *A.*3d 619 (quoting *J.M.*, *supra*, 182 *N.J.* at 412, 866 *A.*2d 178). The panel stated that because the Guidelines were crafted to focus on objective factors and to promote uniformity throughout the state, a court must evaluate the prosecutor's use of those factors "in the same deferential manner as the review of a [p]rosecutor's refusal to consent to a defendant's admission into a Pretrial Intervention (PTI) program." *Id.* at 315, 866 *A.*2d 178 (citing *R.C.*, *supra*, 351 *N.J.Super.* at 259, 798 *A.*2d 111). Therefore, the panel held that "[t]he [p]rosecutor's decision to waive a juvenile must be upheld unless it constitutes a patent and gross abuse of discretion." *Ibid.* (citing *R.C.*, *supra*, 351 *N.J.Super.* at 260, 798 *A.*2d 111). The panel concluded that the Family Court erred in determining that the State's decision to seek waiver in this

instance constituted a patent and gross abuse of discretion. *Id.* at 316–17, 866 *A*.2d 178.

The Appellate Division's decision explained that although a family court's waiver decision itself is subject to review by an appellate court for abuse of discretion, in this instance the Family Court abused its discretion. *Id.* at 320, 866 *A*.2d 178. It stated that the family judge "mistakenly determined that he was entitled to reject the Prosecutor's waiver motion unless it was supported by a justification for waiver over and above the factors the State had already articulated in the statement of reasons." *Ibid.* In particular, the panel rejected the Family Court's approach to deterrence, stating that "[t]he judge's insistence that the Prosecutor 'articulate' specific deterrence as it relates to each juvenile would require the Prosecutor to improperly consider 'individual characteristics' of the juvenile, which is contrary to the express provisions of the Guidelines." *Id.* at 318, 866 *A*.2d 178.

The Appellate Division remanded for the entry of orders waiving V.A., M.R., and C.T. to Superior Court, Law Division, Criminal Part. *Id.* at 321, 866 *A*.2d 178. Because T.H. was under the age of sixteen at the time of the crime, his case was remanded for a rehabilitation hearing before a different judge. *Ibid.*

V.A. moved before this Court for leave to appeal, which was granted. 208 *N.J.* 334, 27 *A*.3d 947 (2011). Thereafter, C.T. and M.R. moved for leave to appeal as within time and for leave to appeal, both of which were granted. 208 *N.J.* 384, 27 *A*.3d 947 (2011). We also granted the American Civil Liberties Union of New Jersey (ACLU) amicus curiae status in the appeal.

III.

V.A., C.T., and M.R. maintain that the Appellate Division decision does not provide guidance on how a court is to review a prosecutor's decision to seek waiver, and they further contend that the patent and gross abuse of discretion standard is too deferential for use in reviewing a waiver decision that results in greater punishment for a juvenile. They also argue that the Guidelines call for a more individualized assessment of each juvenile than was

provided here because the Legislature did not make waiver automatic for each and every sixteen-year-old, or older, juvenile who committed an enumerated offense for which probable cause can be demonstrated.

The State, besides arguing that the family judge's determinations as to these juveniles were contrary to the waiver statute, contends that the patent and gross abuse of discretion standard should apply to the review of a prosecutor's waiver decision. According to the State, if a juvenile aged sixteen or older is charged with an enumerated offense and probable cause is demonstrated, then waiver is automatic provided the prosecutor adheres, as here, to the Guidelines.

The ACLU supports the juveniles' argument that the patent and gross abuse of discretion standard is inappropriate. The amicus curiae maintains that the standard is too deferential to the significant liberty interests at stake in waiver hearings, and it challenges the analogy drawn between PTI and waiver in existing Appellate Division case law.[4]

### IV.

### A.

Shortly after the 2000 amendments to the juvenile waiver statute, *N.J.S.A.* 2A:4A-26, the Appellate Division concluded that

---

[4] The ACLU also challenges the legitimacy of the waiver statute in constitutional arguments that were not raised by the parties and therefore are not properly before us. *See State v. Lazo,* 209 *N.J.* 9, 25, 34 *A.*3d 1233 (2012) (" '[A]n *amicus curiae* must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties.' " (citations omitted)). In addition, the ACLU presents some statistical evidence—limited in nature to two counties unrelated to this proceeding—that it relies on in suggesting that the waiver statute has had a disparate impact across racial, ethnic, and geographic lines. That data was not part of this record and, moreover, is untested. To the extent that the Legislature has sought the assistance of the Attorney General in promoting uniformity, we presume that the data might be useful to the chief law enforcement officer of the State. However, such limited information provides no basis for this Court to address, in this matter, the ACLU's claim.

the patent and gross abuse of discretion standard was applicable to a family court's review of a motion to waive a juvenile over the age of sixteen charged with an enumerated offense, *see R.C.,* *supra,* 351 *N.J.Super.* at 260, 798 *A.*2d 111 (identifying patent and gross abuse of discretion standard as applicable).

In *R.C.,* the Appellate Division acknowledged that two standards of review could apply: (1) the arbitrary and capricious standard used when reviewing various discretionary sentencing decisions by a prosecutor; or (2) the patent and gross abuse of discretion standard that governs "a prosecutor's refusal to consent to a defendant's admission into PTI." *Id.* at 259, 798 *A.*2d 111 (citations omitted). The *R.C.* panel concluded that the juvenile waiver decision was more similar to "a prosecutor's refusal to consent to a defendant's admission into PTI than to a prosecutor's sentencing decisions." *Ibid.* The panel also reasoned that because a waiver determination involves "consideration of a wide range of circumstances relating to the offense charged and the alleged offender's personal circumstances," *id.* at 260, 798 *A.*2d 111, it is more akin to a prosecutor's " 'charging function,' " *ibid.* (quoting *State v. Caliguiri,* 158 *N.J.* 28, 37, 726 *A.*2d 912 (1999)).

We have not squarely addressed this question before; however, in the interim, courts, including the Family Court in this matter, have hewed to the patent and gross standard of review. *See, e.g.,* *V.A., supra,* 420 *N.J.Super.* at 307, 21 *A.*3d 619 (citing patent and gross abuse standard of review as applied in family court's review); *State ex rel. D.Y.,* 398 *N.J.Super.* 128, 132, 939 *A.*2d 834 (App.Div.2008) (applying patent and gross abuse of discretion standard of review to prosecutor's waiver motion); *State v. Read,* 397 *N.J.Super.* 598, 605–06, 938 *A.*2d 953 (App.Div.) (stating that parallel to PTI found in *R.C.* only related to "the standard of judicial review of a prosecutor's decision to waive a complaint," namely, patent and gross abuse of discretion, and did not incorporate "the substantive standards that govern ... a prosecutorial decision [about PTI]"), *certif. denied,* 196 *N.J.* 85, 951 *A.*2d 1038 (2008); *State v. J.M.,* 364 *N.J.Super.* 486, 491, 837 *A.*2d 392

(App.Div.2003) (stating that patent and gross abuse of discretion standard applied), *aff'd in part & remanded in part*, 182 *N.J.* 402, 866 *A.*2d 178 (2005).

### B.

■ We approach the standard of review question mindful of the wide berth the Appellate Division gives to a prosecutor's waiver decision. Certainly generous deference must be allotted to prosecutors in light of the 2000 amendments; however, we have embraced the abuse of discretion standard as presumptively representative of a generous deference to prosecutorial actions, distinguishing it from a patent and gross abuse of discretion as follows:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto [of PTI] (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [*State v. Bender*, 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979) (citation omitted); *see also State v. Baynes*, 148 *N.J.* 434, 444, 690 *A.*2d 594 (1997) (same).]

■ The abuse of discretion standard has been applied to review of a prosecutor's decision to seek a mandatory extended-term sentence, *State v. Lagares*, 127 *N.J.* 20, 33, 601 *A.*2d 698 (1992); a prosecutor's determination on whether to waive a mandatory parole-ineligibility term, *State v. Vasquez*, 129 *N.J.* 189, 195–96, 609 *A.*2d 29 (1992); and a prosecutor's decision to seek a forfeiture of public employment based on a disorderly person offense, *Flagg v. Essex Cnty. Prosecutor*, 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002). Notably, in all those circumstances, the prosecutorial determination visits on the individual a harsher set of circumstances, rather than the denial or conferral of a benefit. The latter circumstance is what is at stake in the PTI context. More fundamentally, however, the charging process generally, and at work in a PTI determination, is an inherently prosecutorial function and is the reason for greater deference. In the circum-

stances presented here, without the prosecutor's motion to the juvenile court, the juvenile remains in that venue for any charges that are brought.

Clearly, review for a gross and patent abuse of discretion has been applied by this Court to review a prosecutor's decision to refuse a defendant entry into PTI. *State v. Negran*, 178 *N.J.* 73, 82–83, 835 *A.*2d 301 (2003); *State v. Nwobu*, 139 *N.J.* 236, 246, 652 *A.*2d 1209 (1995). And, the Attorney General relied on PTI guidelines when establishing the Guidelines for juvenile waiver decisions by prosecutors. *See Guidelines, supra,* at 4. However, that reference cannot circumvent the need for an analysis that matches the proper standard of review to the type of prosecutorial decision-making that is under review.

As noted in *State v. Leonardis (Leonardis I)*, 71 *N.J.* 85, 363 *A.*2d 321 (1976), PTI is a significant beneficial alternative for defendants. *Id.* at 89–90, 363 *A.*2d 321. Even in such instances, "the prosecutor is not immune from the ban against arbitrariness in governmental decision-making." *State v. Leonardis (Leonardis II)*, 73 *N.J.* 360, 377, 375 *A.*2d 607 (1977). In the PTI context, a patent and gross abuse of discretion "is established by showing that the prosecutor's rejection was premised upon consideration of less than all relevant factors, or that the decision was based on consideration of irrelevant or inappropriate factors that amounted to clear error in judgment thereby subverting the goals underlying pretrial intervention." *Flagg, supra,* 171 *N.J.* at 572, 796 *A.*2d 182 (citing *Caliguiri, supra,* 158 *N.J.* at 37, 726 *A.*2d 912; *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217 (additional citations omitted)). "A 'patent and gross abuse of discretion' is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.' " *State v. Wallace*, 146 *N.J.* 576, 582–83, 684 *A.*2d 1355 (1996) (citation omitted). The Legislature prescribed the patent and gross abuse of discretion standard as appropriate to review a prosecutor's objection to the statutory right to admis-

sion into Drug Court. *See N.J.S.A.* 2C:35–14(c)(2); *see also State v. Meyer,* 192 *N.J.* 421, 431–32, 930 *A.*2d 428 (2007). However, a second track into Drug Court continues to exist under the general judicial sentencing authority under "the discretion of the drug court judge." *Meyer, supra,* 192 *N.J.* at 431–34, 930 *A.*2d 428 (distinguishing different tracks of Drug Court admission); *see also State v. Clarke,* 203 *N.J.* 166, 175–77, 1 *A.*3d 607 (2010) (same). Review of actions taken under general sentencing authority are subject to an abuse of discretion review. *See Clarke,* 203 *N.J.* at 176–77, 1 *A.*3d 607; *Meyer, supra,* 192 *N.J.* at 433, 930 *A.*2d 428; *see generally State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.*2d 370 (1984).[5]

■ Although PTI standards were used in the development of the Guidelines here, the PTI decision is one that reflects a judgment to reduce possible punishment through the diversion process. Here the discretionary prosecutorial decision places the juvenile at risk of enhanced punishment. And, the choice to pursue waiver is not driven by solely objective criteria. The Guidelines do not require the prosecutor to seek waiver whenever probable cause is present for an enumerated offense committed by a juvenile over the age of sixteen. However, the Legislature wanted to channel the prosecutor's exercise of discretion toward a uniform application of the Guidelines. *See N.J.S.A.* 2A:4A–26(f); *J.M., supra,* 182 *N.J.* at 419, 866 *A.*2d 178.

In light of the enhanced punishment looming as a result of the

---

[5] On the other hand, for completeness we note that the patent and gross standard was rejected in *State v. Abbati,* 99 *N.J.* 418, 493 *A.*2d 513 (1985). This Court rejected an Appellate Division holding that "although trial courts have inherent power to dismiss an indictment with prejudice, it can be exercised only when the court finds a 'patent and gross abuse of [prosecutorial] discretion' by the State." *Id.* at 433, 493 *A.*2d 513 (alteration in original). Instead, a multi-factor test was adopted for a trial court's use when exercising its authority to "dismiss an indictment with prejudice after successive juries have failed to agree on a verdict [and] it determines that the chance of the State's obtaining a conviction upon further retrial is highly unlikely." *Id.* at 435, 493 *A.*2d 513.

serious decision to waive a juvenile from family to adult court,[6] and to advance the legislative direction to promote uniformity, we find that the abuse of discretion standard—as utilized in *Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698, for review of another prosecutorial determination that affects the enhancement of punishment—is more appropriate. In *Lagares,* as here, there existed a strong interest in promoting uniformity and curbing the abuse of discretionary prosecutorial authority in respect of *N.J.S.A.* 2C:43-6(f), which mandates that a court impose an extended term with a specified period of parole ineligibility for repeat drug offenders upon the prosecutor's application. *Lagares, supra,* 127 *N.J.* at 32, 601 *A.*2d 698. We explained that

[w]here the Legislature has permitted the executive to select defendants for enhanced punishment or favorable treatment, this Court has generally required that decision-making be carried out in a fashion that limits potential arbitrariness. In addition, we have required that the judiciary retain the power to review prosecutorial decisions to avoid abuses of discretion. We continue that approach today.

[*Id.* at 28, 601 *A.*2d 698.]

In *Lagares,* guidelines were delineated to comply with the Court's holding. *Id.* at 32, 601 *A.*2d 698. Here the Legislature foresaw the importance of having guidelines to avoid unfettered prosecutorial discretion in a decision that is so influential on sentencing. In *Lagares,* we imposed a "heavy" abuse of discretion standard to be carried by a defendant seeking to avoid a prosecutor's application made in compliance with guidelines issued, in deference to the legislative determination that the sentencing enhancement was the new norm. *Id.* at 33, 601 *A.*2d 698. Similarly, here, we also impose on a juvenile, aged sixteen or older charged with an enumerated offense, who seeks to avoid the statutory direction that waiver "shall" be ordered when a prosecutor brings such a motion and demonstrates probable cause for the

---

6 *See Kent v. United States,* 383 *U.S.* 541, 556, 86 *S.Ct.* 1045, 1055, 16 *L.Ed.*2d 84, 94 (1966) (noting critically important nature of waiver decision); *J.M., supra,* 182 *N.J.* at 410, 866 *A.*2d 178 (citing *R.G.D., supra,* 108 *N.J.* at 4–5, 527 *A.*2d 834) (same).

offense charged, a similar abuse of discretion standard to be met when the family court reviews the prosecutor's waiver decision made in connection with the Guidelines issued. As in *Lagares*, we hold that a juvenile must show clearly and convincingly that a prosecutor abused his or her discretion in order to secure relief. *See ibid.* The purpose of the family court's review is not to allow the judicial body to substitute its judgment when assessing the factors that the Attorney General has required prosecutors to consider when making waiver decisions.

■ That said, the 2000 amendments to the juvenile waiver statute have established an analogous opportunity for the prosecutor to select among juveniles—either for harsher punishment through waiver to adult court for the serious offenses listed among those enumerated in the waiver statute, or for the more remedial programs and more flexible sentences available by remaining in the jurisdiction of the family court. We cannot envision that the Legislature expected judicial blindness to the prosecutor's compliance with the Guidelines' efforts to channel prosecutorial discretion and avoid arbitrariness in implementation that could lead to the undermining of legislative efforts toward uniformity. In sum, we find that the abuse of discretion standard will best further the goal of uniform application because it will provide an additional level of protection against arbitrariness in a critical decision affecting the quantity and quality of punishment for a juvenile.

V.

A.

■ For the court to perform a review of a juvenile waiver application under the abuse of discretion standard that we adopt today, the prosecutor's statement of reasons must evidence that the prosecutor actually considered for each particular juvenile the factors that "shall" be weighed under the Attorney General's Guidelines. *See Guidelines, supra,* at 5–6. The statement therefore cannot contain a series of cursory conclusions mirroring the

language of the Guidelines. That will not reveal the prosecutor's evaluation of the facts that the Guidelines' factors direct shall comprise the body of information to be used in making the decision to waive a particular juvenile. And, it prevents an assessment of the prosecutorial decision from the vantage of an abuse of discretion because it shields whether an individualized determination was made for the juvenile.

■ Applying that standard here, the Statements generally disclosed a good amount of information about these juveniles that was used in reaching the decision to seek waiver. First, we are not troubled by the prosecutor's determination to present one omnibus description of the incident when multiple actors are involved. The prosecutor's case was presented from the view that all of the juveniles were active to various degrees in the unprovoked group assault on Estrada and it described each participant's role during the attack. Its presentation in that format in the "nature of the offense" section is not generically problematic for a statement of reasons and, in any event, it was supplemented by the detective's testimony at the probable cause hearing with even more detail about certain of the participants. The finding of probable cause as to each juvenile is not an issue in this case. We do not, and should not, conflate the amount of information about the nature of the offense with the proofs needed for the probable cause finding.

Second, to the extent that the juveniles argue that the statement must address each listed factual sub-consideration contained in the "Nature of the Offense" section of the Guidelines, we reject that as a litmus test for waiver here. The statement's narrative must demonstrate that, to the extent pertinent, those sub-considerations are noted when present and considered in the waiver evaluation. Although it would be preferable in future statements of reasons to underscore in some fashion those considerations so that the ones that weigh more heavily in the evaluation are made apparent, the narrative in this instance addressed the type of information that the Guidelines' sub-considerations seek. In sum,

these Statements of Reasons sufficiently explained the nature of these offenses, providing an adequate basis for understanding why seeking waivers on the basis of this incident was not an abuse of discretion.

Similarly, we find that sufficient individualized information about the youths' past records was presented. Additionally, the Statements provided minimal but nonetheless individualized information in the "Effect on Co–Defendants," "Maximum Sentence," "Trial Considerations," and "Victim's Input" factors. However, it is essential that when addressing these factors—and deterrence— the prosecutor's statement of reasons provide enough of a fact-based explanation to support the conclusion that the factor supports waiver. That is necessary to ensure a meaningful review.

If the factor's, or section's, explanation is a mere regurgitation of the Guidelines' language, that will not show that the prosecutor engaged in an individualized decision, rendering the overall decision susceptible to the claim that it is arbitrary and constitutes an abuse of discretion. Under the abuse of discretion standard, arbitrariness can be demonstrated if the prosecutor considers incomplete information or information outside the bounds set by the Guidelines when deciding to seek waiver. *See Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217 (explaining that abuse of discretion demonstrated when decision under review was based on incomplete information or "irrelevant or inappropriate factors"). And, undoubtedly, a prosecutor's decision can be vulnerable to a claim of arbitrariness due to the failure to assess the juvenile as a distinct individual who deserves an individualized waiver determination. For all those reasons, it behooves the prosecutor when formulating a statement of reasons to clearly set forth the facts used in assessing the factors directed by the Guidelines and to explain how evaluation of those facts led to the waiver conclusion.

The Legislature did not say that a prosecutor must seek waiver for all sixteen and older juveniles charged with an

enumerated offense. *See N.J.S.A.* 2A:4A–26. Therefore, a reviewing court must have before it a statement that explains why the discretionary determination was made as to the individual juvenile before the court. A proper statement of reasons protects against the abuse of discretion that undermines the general interest in promoting uniformity in these determinations and avoids arbitrary decision-making. That said, when applying the abuse of discretion standard to such statements, it must be borne in mind that a juvenile seeking to avoid the "norm" of waiver in these circumstances, when probable cause is found to exist, must carry a heavy burden to clearly and convincingly show that the prosecutor was arbitrary or committed an abuse of his or her considerable discretionary authority to compel waiver.

Were the thinness of the Statements' factors identified earlier all that were involved here, we might be inclined to let pass these Statements of Reasons for Waiver, with direction that more full explanations generally will be preferred, if not necessary, to survive an abuse of discretion review. However, because the Statements' explanations on deterrence are clearly deficient to permit review, we must remand for a more robust explanation by the prosecutor. We turn, in closing, to address the deterrence factor.

### B.

The deterrence factor was addressed with a curt statement, announced in conclusory fashion, that "[t]he need to deter the juvenile and others from engaging in this sort of activity is abundantly clear." That explanation was inadequate to pass under the abuse of discretion standard. Although the juveniles must carry the burden of persuading the court that, clearly and convincingly, the waiver determination was an abuse of discretion, this Statement fails to explain how deterrence of the particular individual, and of others generally, is served by waiving each of these juveniles to adult criminal proceedings. *See State v. Nelson,* 173 *N.J.* 417, 493, 803 *A.*2d 1 (2002) ("[T]he concept of deterrence

involves the notion of 'individual deterrence'—that punishment will dissuade the offender from repeating his criminal acts. It also includes the principle of 'general deterrence'—that punishment can 'discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of [punishment] is likely to follow from [certain crimes].' " (alterations in original) (citations omitted)).

By requiring an individualized assessment about deterrence—namely, how the individual need for deterrence is better advanced by waiver as opposed to having the juvenile remain in family court—the evaluation need not become a back door into the former rehabilitation assessment that the Legislature rejected for this special category of juvenile offenders. We do not suggest that the individualized deterrence assessment must be converted into a requirement to demonstrate that the juvenile cannot be rehabilitated. But that does not excuse the prosecutor from considering and explaining his or her conclusions about the respective merits of deterrence through adult versus juvenile proceedings on an individualized basis for each juvenile for whom waiver is sought. In that respect, it is inconceivable that the prosecutor, to some extent, would not also weave in the consideration of the juvenile's past history of behavior. That should be done, if for no other reason, to avoid a claim that the ultimate waiver decision was flawed by a lack of individualized consideration of the juvenile, thus constituting an abuse of discretion. The detailed information is not for the purpose of having the court re-evaluate it and substitute its judgment about the relative merits of the deterrence determination. Rather it is necessary to demonstrate that an individualized deterrence assessment was made, and was based on accurate and appropriate information about the juvenile.

For this reason alone, the Statements of Reasons presented in this matter require a more full explanation of the deterrence assessment of the three juveniles. A remand is therefore necessary. Moreover, the other identified conclusory statements will benefit from amplification since a remand is unavoidable.

## VI.

The judgment of the Appellate Division is reversed in respect of the standard of review to be applied and the matter is remanded for further proceedings consistent with this opinion.

JUSTICE PATTERSON, dissenting.

More than a decade ago, the Legislature amended *N.J.S.A.* 2A:4A–26 to facilitate waiver of complaints against sixteen- and seventeen-year-old juveniles charged with enumerated serious crimes into adult criminal court. Under the amended statute, these juveniles are treated uniquely by the Legislature. Younger juveniles are able to present evidence of the probability of their rehabilitation in order to defeat waiver. In contrast, pursuant to *N.J.S.A.* 2A:4A–26 and a corresponding court rule, a juvenile who is aged sixteen or older is transferred to adult criminal court upon application of the prosecutor if there is probable cause to believe that he or she has committed one of the crimes specified in the statute. *N.J.S.A.* 2A:4A–26; *R.* 5:22–2(c)(3). As this Court noted in *State v. J.M.,* "when a sixteen-year old or above is charged with an enumerated offense, the prosecutor need only establish probable cause for the court to waive the juvenile to adult court." 182 *N.J.* 402, 412, 866 *A.*2d 178 (2005).

The majority holds that the "abuse of discretion" standard governs judicial review of a prosecutor's exercise of discretion in seeking waiver into adult criminal court of a sixteen- or seventeen-year-old who has committed an enumerated offense under *N.J.S.A.* 2A:4A–26 and *Rule* 5:22–2(c)(3). It rejects the "patent and gross abuse of discretion" standard that was adopted by the Appellate Division in *State in the Interest of R.C.,* 351 *N.J.Super.* 248, 260, 798 *A.*2d 111 (App.Div.2002), and applied by the Appellate Division panel in this case, *State in the Interest of V.A.,* 420 *N.J.Super.* 302, 315, 21 *A.*3d 619 (App.Div.2011).

I respectfully dissent from the majority's holding with regard to the standard of judicial review. The Legislature amended *N.J.S.A.* 2A:4A–26 in 2000 in order to vest broad discretion in the

prosecution to decide whether to waive juvenile complaints involving this discrete category of juvenile offenders into adult criminal court. In doing so, however, the Legislature ensured that the exercise of discretion would not be arbitrary through its direction to the Attorney General to create guidelines that would govern the waiver analysis. As a result, prosecutors' decisions are subject to mandatory oversight by the County Prosecutor or his or her designee. The prosecutors charged with the responsibility of deciding whether to waive these juveniles into adult criminal court must undertake a detailed analysis under the statutorily mandated Attorney General's Juvenile Waiver Guidelines. Given these safeguards, I would retain the "patent and gross abuse of discretion" standard that has governed judicial review until today's decision.

Prior to the 2000 amendment, any juvenile charged with any offense could present evidence of his or her potential for rehabilitation during the waiver hearing. *See L.* 1991, *c.* 91, § 6. The 2000 amendment barred courts from considering rehabilitation evidence regarding sixteen- or seventeen-year-old juveniles who are charged with the serious offenses enumerated in the statute. *L.* 1999, *c.* 373, § 1 (current version at *N.J.S.A.* 2A:4A–26(e)). The Legislature streamlined the process of waiving sixteen- and seventeen-year-old juveniles charged with serious offenses into adult criminal court.

The Legislature expressed its intent that the 2000 amendment would facilitate waiver by "[e]as[ing] conditions for trial of certain juvenile offenders as adults." *L.* 1999, *c.* 373; *see also Senate Law and Public Safety Comm. Statement to Senate Bill No. 286,* at 1 (Feb. 23, 1998) ("This bill is intended to enhance public safety by shortening the process by which the cases of juvenile offenders charged with the most serious offenses may be waived from the jurisdiction of the Family Court."). To that end, the Legislature envisioned that county prosecutors would exercise prosecutorial discretion in determining whether to seek transfer of these juveniles to adult criminal court. When Governor Christine Todd Whitman conditionally vetoed the bill, her statement noted:

The bill ... changes the procedure for determining whether criminal charges involving a juvenile should be transferred from family court to adult criminal court. Specifically, the bill would require a juvenile court to transfer a matter to adult criminal court upon a prosecutor's request in cases involving [certain] violent offenses ... as well as cases involving drug distribution in a school zone. Under the bill, waiver would be automatic in these cases and the issue of a juvenile's potential for rehabilitation could not be considered by the court. The intent of the legislation is to shorten the transfer hearing process in matters most likely to be transferred to adult criminal court, so that judicial and prosecutorial resources may be used more efficiently.

[*Governor's Conditional Veto to Senate Bill No. 286*, at 1–2 (Jan. 10, 2000).] [1]

Thus, the Legislature sought to promote public safety, and limit the use of judicial resources, by mandating transfer to adult criminal court upon the request of a prosecutor, only for the oldest group of juveniles accused of the most serious crimes. *See N.J.S.A.* 2A:4A–26; *J.M., supra,* 182 *N.J.* at 412, 866 *A.*2d 178 (noting Legislature's intent "to increase prosecutorial discretion and to make waiver more likely in the case of [the affected category of] juveniles").

In conformance with the statute, the applicable court rule distinguishes between this discrete group of juveniles and all others. When a sixteen- or seventeen-year-old is charged with one of the enumerated crimes, through the exercise of "prosecutorial discretion," the juvenile is transferred to adult criminal court upon a finding of probable cause. *R.* 5:22–2(c)(3). In contrast, for other juveniles, transfer to adult criminal court is a function of "judicial discretion." *R.* 5:22–2(c)(1), (2) and (4). Thus, both the

---

[1] Governor Whitman's conditional veto was related to juveniles who are not in the category at issue in this case, sixteen- and seventeen-year-olds accused of one of the enumerated serious offenses. The original bill would have barred the courts from considering rehabilitation evidence for all juveniles charged with certain serious crimes. *Assembly Bill No. 3182*, at 3–4 (May 24, 1999). Governor Whitman returned the bill, recommending that "the provisions of the bill which require 'automatic' transfer upon the prosecutor's motion be limited to juveniles over the age of 15." *Governor's Conditional Veto, supra,* at 2. Her conditional veto also recommended "that the bill's application to all school zone drug offenses, which currently include third and fourth degree drug distribution offenses, be limited to apply to the relatively more serious drug distribution offenses." *Ibid.* The Legislature adopted these recommendations, and the bill was enacted. *L.* 1999, *c.* 373, § 1.

statute and the court rule suggest that the prosecutor's discretion is subject to limited judicial review.

A deferential standard of judicial review is, in my view, consonant with the Legislature's careful constraints on waiver for older juveniles accused of serious crimes. The broad discretion that *N.J.S.A.* 2A:4A–26 affords to prosecutors is exercised in accordance with meticulous statewide standards. The statute required the Attorney General to promulgate detailed guidance for prosecutors charged with decision-making responsibility for juvenile waiver. *N.J.S.A.* 2A:4A–26(f). The Attorney General's Office promptly generated the Attorney General Juvenile Waiver Guidelines. *Attorney General Juvenile Waiver Guidelines* (Mar. 14, 2000) (hereinafter *Guidelines*). The Guidelines precisely frame the prosecutor's inquiry with substantive factors, requiring prosecutors to conduct and document an analysis of each juvenile and each offense. *Id.* at 5–7. The Guidelines also ensure strict supervisory oversight within each prosecutor's office, providing that the County Prosecutor or his or her designee must review the assistant prosecutor's initial waiver decision. *Id.* at 7. In short, the Guidelines leave little room for arbitrary decisions by individual prosecutors.

It is in that setting that our courts have, to date, applied a highly deferential standard of review to prosecutors' waiver decisions under *N.J.S.A.* 2A:4A–26 and *Rule* 5:22–2(c). Shortly after *N.J.S.A.* 2A:4A–26 was amended, an Appellate Division panel decided *R.C.*, *supra*, 351 *N.J.Super.* 248, 798 *A.*2d 111. There, the panel concluded that prosecutorial decisions to waive complaints against sixteen- and seventeen-year-old juveniles accused of enumerated offenses to adult criminal court are subject to judicial review. *Id.* at 257–59, 798 *A.*2d 111. The panel then considered two alternative standards of review applied to the discretionary decisions of prosecutors. *Id.* at 259, 798 *A.*2d 111. The panel first reviewed the "arbitrary and capricious" standard under which courts review prosecutors' decisions to seek mandatory extended terms under *N.J.S.A.* 2C:43–6(f), to waive mandatory periods of

parole ineligibility under *N.J.S.A.* 2C:35–12, or to waive forfeitures of public employment upon a conviction for a disorderly persons offense pursuant to *N.J.S.A.* 2C:51–2(e). *Ibid.* (citing *Flagg v. Essex Cnty. Prosecutor,* 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002); *State v. Vasquez,* 129 *N.J.* 189, 195–97, 609 *A.*2d 29 (1992); *State v. Lagares,* 127 *N.J.* 20, 31–32, 601 *A.*2d 698 (1992)). It then discussed the "patent and gross abuse of discretion" standard under which courts review prosecutors' decisions whether to admit defendants into pretrial intervention (PTI), pursuant to *N.J.S.A.* 2C:43–12 to –22. *Ibid.* (citing *State v. Wallace,* 146 *N.J.* 576, 582, 684 *A.*2d 1355 (1996); *State v. Dalglish,* 86 *N.J.* 503, 511–13, 432 *A.*2d 74 (1981)). Holding that "a prosecutor's decision concerning the waiver of a juvenile complaint to adult court has greater similarity to a prosecutor's refusal to consent to a defendant's admission into PTI than to a prosecutor's sentencing decisions," the panel noted:

> Both a decision whether to consent to a defendant's admission into PTI and a decision whether to waive a juvenile complaint to adult court are made subsequent to the initial decision to charge a person with a criminal offense. Such prosecutorial decisions involve consideration of a wide range of circumstances relating to the offense charged and the alleged offender's personal circumstances, and are closely related to a prosecutor's charging function. Thus, such decisions are characteristic of those determinations typically made by prosecutors in their law enforcement capacity, which are ordinarily subject to only limited judicial review.
>
> [*Id.* at 259–60, 798 *A.*2d 111 (quotations and citations omitted).]

The Appellate Division panel held that "limited" judicial review under the "patent and gross abuse of discretion" standard "will further the legislative intent" of conferring primary responsibility for waiver decisions upon the county prosecutors, "while at the same time providing an adequate safeguard against the arbitrary exercise of this discretionary authority." *Id.* at 260, 798 *A.*2d 111; *see also State in the Interest of D.Y.,* 398 *N.J.Super.* 128, 132, 939 *A.*2d 834 (App.Div.2008); *State v. Read,* 397 *N.J.Super.* 598, 605, 938 *A.*2d 953 (App.Div.), *certif. denied,* 196 *N.J.* 85, 951 *A.*2d 1038 (2008); Pressler & Verniero, *Current N.J. Court Rules,* cmt. 4.1 on *R.* 5:22–2(c) (2012).

In my view, the Appellate Division's analysis in *R.C.* is fully consistent with the Legislature's intent when it amended *N.J.S.A.* 2A:4A–26 in 2000. While the analogy between juvenile waiver and PTI determinations is not exact, there are significant similarities between the two prosecutorial functions. PTI determinations and prosecutorial decisions regarding juvenile waiver share a close nexus to the prosecutor's charging authority. *See R.C., supra,* 351 *N.J.Super.* at 259–60, 798 *A.*2d 111; *see also State v. Negran,* 178 *N.J.* 73, 82, 835 *A.*2d 301 (2003) (noting "the close relationship of the PTI program to the prosecutor's charging authority"). PTI determinations are " 'primarily individualistic in nature and a[n administrator and] prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation.' " *Negran, supra,* 178 *N.J.* at 80, 835 *A.*2d 301 (quoting *State v. Nwobu,* 139 *N.J.* 236, 255, 652 *A.*2d 1209 (1995)). The same can be said of juvenile waiver determinations under *N.J.S.A.* 2A:4A–26 and the Guidelines. The factors prescribed by statute, the applicable court rule and the accompanying PTI Guidelines provide a detailed structure for the prosecutor's PTI decision. *See N.J.S.A.* 2C:43–12(e); *R.* 3:28; *Guidelines for Operation of Pretrial Intervention in New Jersey* (July 13, 1994). A prosecutor's juvenile waiver decision is similarly based on a statewide model. *See Guidelines, supra,* at 1–3. Both categories of prosecutorial decisions are conducted within a carefully planned analytical framework designed to ensure individualized analysis and uniformity in practice.[2] *See id.* at 4–7. In my opinion, these two prosecutorial

---

[2] The majority distinguishes juvenile waiver determinations from PTI determinations on the ground that "PTI is a significant beneficial alternative for defendants." *Ante* at 23, 50 *A.*3d at 623. That distinction should not justify a stricter standard of review. Depending on their outcome, prosecutorial decisions on both PTI and juvenile waiver may or may not benefit an individual accused of an offense. Prosecutorial decisions on PTI diversion are subject to the "patent and gross of discretion" standard, whether or not those decisions result in the defendant's diversion to PTI and thus benefits the defendant. *See Wallace, supra,* 146 *N.J.* at 582–83, 684 *A.*2d 1355; *Dalglish, supra,* 86 *N.J.* at 511–13, 432 *A.*2d 74. In my view, the distinction cited by the majority should not determine the scope of judicial review.

functions are similarly addressed in the statutes that created them, and should be subject to the same standard of judicial review.

I consider the "patent and gross abuse of discretion" standard that has governed judicial review of prosecutorial decisions under *N.J.S.A.* 2A:4A–26 for a decade to be consistent with the Legislature's intent when it amended *N.J.S.A.* 2A:4A–26 in 2000. Accordingly, I respectfully dissent from the majority's decision imposing a stricter standard of judicial review, and I would affirm the decision of the Appellate Division.

*For reversal and remandment*—Chief Justice RABNER, and Justices LaVECCHIA and ALBIN—3.

*For affirmance*—Justices HOENS and PATTERSON—2.

*Not Participating*—Judge WEFING (temporarily assigned).