NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4398-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JAMAAL CAMPBELL,

 Defendant-Appellant.

____________________________

 Submitted December 21, 2016 – Decided September 13, 2017

 Before Judges Simonelli and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Atlantic County,
 Indictment No. 14-12-3442.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jason A. Coe, Assistant Deputy
 Public Defender, of counsel and on the
 briefs).

 Diane M. Ruberton, Acting Atlantic County
 Prosecutor, attorney, for respondent
 (Sevan Biramian, Special Deputy Attorney
 General/Acting Assistant Prosecutor, of
 counsel and on the brief).

PER CURIAM
 Defendant Jamaal Campbell appeals from a May 4, 2015 judgment

of conviction for second-degree unlawful possession of a handgun,

N.J.S.A. 2C:39-5(b), charged in count twenty-one of Indictment No.

14-12-3442. Defendant was initially charged as a juvenile in a

complaint alleging acts of delinquency that, if committed by an

adult, would constitute second-degree unlawful possession of a

handgun, N.J.S.A. 2C:39-5(b) (count one), and second-degree

possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-

4(a) (count two). After the State prevailed on its motion to

waive jurisdiction by the Family Part and prosecute defendant as

an adult pursuant to N.J.S.A. 2A:4A-26(a),1 he was charged with

both offenses in counts twenty-one and twenty-two, respectively,

of Indictment No. 14-12-3442. Thereafter, defendant entered a

negotiated guilty plea to count twenty-one of the indictment and

was sentenced to a five-year term of imprisonment with a three-

year period of parole ineligibility pursuant to the Graves Act,

N.J.S.A. 2C:43-6(c). On appeal, defendant challenges the Family

Part order waiving jurisdiction, arguing that the State failed to

establish probable cause that he possessed a handgun for an

1
 We note that this case was adjudicated long before N.J.S.A.
2A:4A-26 was repealed and replaced by N.J.S.A. 2A:4A-26.1, which
went into effect on March 1, 2016. L. 2015, c. 89, § 1.
Accordingly, all references to the waiver statute are to the prior
law.

 2 A-4398-14T1
unlawful purpose, a Chart 1 offense, and that the State abused its

discretion in seeking a waiver. After reviewing the arguments

advanced on appeal, in light of the record and applicable law, we

affirm.

 I.

 Over the course of four days, two witnesses testified for the

State at the waiver hearing, Detective Charles Stewart and Sergeant

Christopher Barber, both veteran officers with the Atlantic City

Police Department. Defendant's mother testified for the defense.

Barber was qualified as an expert in the areas of organized

criminal gang activity and firearms. The State's proofs

demonstrated that on June 23, 2013, defendant, then seventeen-

years-old, possessed a handgun to further the illicit activities

of two known gang members who had engaged in a nightlong spree of

violence against rival gang members and innocent civilians that

began on June 22, 2013. During the previous month, approximately

fourteen gang-related shootings were attributed to two rival

gangs, Dirty Blok and 800 Blok. Defendant was believed to be

associated with Dirty Blok, and specifically, two of Dirty Blok's

senior members, Austin Clark and Abdul Bailey.

 The crime spree began at 5:30 p.m. on June 22, 2013, when

police responded to a report of ten shots fired in the Carver Hall

section of Atlantic City, an area known for drug trafficking,

 3 A-4398-14T1
shootings, homicides and gang activity. The shooter, who was

described as an African-American male wearing a blue fisherman-

style hat and a blue and white shirt, was identified as Clark.

Although neither Clark nor the intended target were located, two

.380 caliber shell casings were found at the scene. Next, at 6:24

p.m., police responded to a report of a carjacking at gunpoint in

the 300 block of Madison Avenue. The victim reported that an

African-American male wearing a blue fisherman-style hat and a

blue jacket took his black SUV after pointing a handgun in his

face. The victim later identified Clark as the carjacker. A male

who was with Clark fled on foot and three males at the scene tried

to intimidate the victim while he was talking to the police by

pointing at him.

 Five minutes later, at 6:29 p.m., the ShotSpotter, a gunshot

detection system, alerted police dispatch that three shots were

fired in the area of North Maryland Avenue, a high crime area and

essentially the home territory for the 800 Blok gang. Within a

minute of the alert, a 9-1-1 caller reported that their home

located on North Maryland Avenue was struck by gunfire. When

police responded to the scene, they found a man who was shot in

the leg but refused to cooperate with law enforcement. Witnesses

reported, however, that the shots were fired from a black SUV

 4 A-4398-14T1
matching the description of the vehicle that was carjacked five

minutes earlier.

 At 7:35 p.m., police responded to a report of an armed robbery

on Belfield Avenue. The victim reported that an African-American

male wearing a fisherman-style hat pulled up in a black SUV while

he was standing outside of his home and ordered him to turn over

his belongings. When the victim hesitated, the robber shot him

in the arm and fled. A .380 caliber shell casing was recovered

in the street and the victim later identified Clark as the robber.

At 7:38 p.m., the ShotSpotter again alerted police dispatch to

gunfire in the 600 block of Drexel Avenue. When police responded,

they found a parked blue Volkswagen and the adjacent residence hit

by gunfire. The fender of the Volkswagen was also struck by a

black vehicle.

 At 7:43 p.m., the ShotSpotter and a 9-1-1 caller alerted

police to gunfire in the area of North Rhode Island. When police

responded, they discovered that a residence located on North Rhode

Island was struck by five gunshots. Witnesses reported that,

before the shooting, a black SUV was seen near three African-

American males standing on the block. After the gunshots were

fired, the SUV fled. Police were unable to locate the three

purported targets but shattered glass believed to be from the

carjacked black SUV was recovered at the scene.

 5 A-4398-14T1
 At 8:23 p.m., police received a tip that Clark was seen on

New Jersey Avenue and, at 8:27 p.m., police recovered the carjacked

black SUV in a vacant lot parallel to Drexel Avenue and close to

Clark's residence. The SUV's windows were shattered and three

bullets were found inside the vehicle, consistent with someone

shooting at the vehicle. At 10:14 p.m., police responded to a

report of a disturbance at the Schoolhouse Apartments located on

North Martin Luther King Boulevard, another high crime area. The

Schoolhouse Apartments and the Stanley Holmes Village, a housing

project located just north of the Schoolhouse Apartments, was the

home territory for the Dirty Blok gang.2 Police located a blood

trail at the Schoolhouse Apartments that led to an apartment where

the residents reported that Clark pistol-whipped one of the

residents who was a known Dirty Blok associate, while saying

"[t]hat ni**er just tried to play me. I'm going to kill you."

Clark then reportedly fled towards the Stanley Holmes Village.

 At 11:35 p.m., dispatch received a 9-1-1 call reporting

another armed robbery on J.J. Waters Street. When police

responded, the victims reported that two males stole their cell

phones and fired a single shot before fleeing. The gunman was

2
 After the State rested, defendant's mother testified that
defendant lived with her in the Stanley Holmes Village. She
testified further that although she was not home on the dates in
question, defendant was there with his older sister.

 6 A-4398-14T1
identified as Clark and the other robber was identified as Bailey,

who lived less than a block away on Robinson Avenue. Sometime

after midnight, while police responded to the Robinson Avenue

address in pursuit of Clark and Bailey, a gunshot was heard in

that area. In response, a large police presence, consisting of a

SWAT team as well as uniformed and plain-clothes officers,

converged on Robinson Avenue and secured the residence as well as

the outside perimeter. Bailey was found in the perimeter and

arrested. Defendant was also found in the perimeter in proximity

to Bailey. Defendant was initially detained by police but was

later arrested when a .45 caliber semi-automatic handgun with six

rounds in the magazine and one round loaded in the chamber was

recovered from his front waistband. Barber testified that the gun

was cocked, loaded and ready to be discharged and could be quickly

retrieved from its location. While defendant and Bailey were

awaiting transportation to police headquarters, Bailey told

defendant "Keep your mouth shut. Don't say a f**king thing." In

response, defendant calmly nodded in the affirmative.

 Around the same time, police spotted Clark on an exterior

stairwell of an Indiana Avenue residence, which faced the rear

patio of Bailey's home on Robinson Avenue. A foot pursuit ensued

which resulted in Clark's apprehension. A .380 caliber handgun

with an empty magazine inserted inside was recovered on the

 7 A-4398-14T1
stairwell where Clark was first spotted. According to Barber, the

handgun had a round stuck between the slide and the ejection port

that caused the gun to malfunction. Barber also testified that a

live .45 caliber round was recovered on the rear patio of Bailey's

residence that was in the same condition as the rounds found in

the handgun recovered from defendant. According to Barber, the

handgun recovered from defendant was missing one round. No other

ammunition was found in the rear of Bailey's residence and the

location of the round was a position from which cover could have

been provided for Clark. A blue and white sweat jacket was also

found in the back yard of Bailey's residence and a fisherman-style

hat was recovered inside Bailey's home.

 In describing the operation, structure, membership and

hierarchy of the Dirty Blok gang, Barber explained that the gang

was a criminal enterprise that primarily made money through drug

trafficking and was prone to violence and subject to internal

conflicts and jockeying for leadership positions. Barber

described the distinction between membership and associate

membership and explained that membership could be established

through self-reporting, social media, tattoos, clothing, and

congregating in certain geographical areas. According to Barber,

a newcomer to the gang could rise within the organization by

performing designated tasks such as watching out for rival gang

 8 A-4398-14T1
members or police coming into the area, providing security to

protect both gang territory and other gang members, facilitating

drug trafficking, or enforcing the rules of the organization both

internally and externally through acts of violence.

 Barber testified that although he was unaware of defendant's

affiliation with the Dirty Blok gang prior to the events that

transpired from June 22 to 23, 2013, after those events he detected

a pattern. According to Barber, the events showed that defendant

was associated with the Dirty Blok gang based on defendant's

proximity to Bailey and Clark at the time and place in question,

Bailey's order to defendant to keep his mouth shut to which

defendant assented, and the fact that defendant was armed with a

cocked and loaded readily accessible firearm in an area where a

known gang member was being sought by police.

 Following the waiver hearing, in a written decision issued

on May 13, 2014, Judge Joseph Marczyk found probable cause that

defendant possessed the loaded handgun for an unlawful purpose and

concluded that the prosecutor's decision to seek waiver did not

constitute an abuse of discretion under the Attorney General's

Guidelines. The judge acknowledged there was no evidence defendant

was present during any of the violent crimes committed by Clark

and Bailey prior to their arrest and that defendant was not

identified by law enforcement as a member or associate of the

 9 A-4398-14T1
Dirty Blok gang prior to his arrest. The judge acknowledged

further that defendant was never observed in the rear of the

Robinson Avenue address and the live .45 caliber round found there

was a different color than the rounds found in the handgun

recovered from defendant.

 However, Judge Marczyk rejected defendant's argument that

there was insufficient evidence defendant possessed the handgun

for an unlawful purpose or was associated or involved with gang

activity. Judge Marczyk found "there was sufficient evidence

produced . . . to demonstrate the existence of the Dirty Blok and

800 Blok gangs" and "that Austin Clark and Abdul Bailey were

associates or members of the gang." The judge found further that

"Austin Clark and Abdul Bailey were involved in gang related

criminal activity on June 22, 2013 shortly before their arrest in

the area of the . . . Robinson Avenue residence."

 In concluding that the State established probable cause that

defendant possessed the handgun for an unlawful purpose, the judge

explained:

 Specifically, [defendant] entered into an area
 that he knew was being monitored by police
 while carrying a loaded .45 caliber handgun.
 Moreover, he remained in the location of
 . . . Robinson Avenue after a shot was heard
 in the area shortly after the robbery on JJ
 Waters Avenue involving Austin Clark and Abdul
 Bailey. Shortly after the robbery, he was
 found in front of the . . . Robinson Avenue

 10 A-4398-14T1
 residence with Abdul Bailey who had just been
 purportedly involved in an armed robbery. It
 should also be noted that [defendant] was
 arrested with Bailey and in the vicinity of
 where Clark was arrested shortly thereafter.
 In the context of an evening in which Austin
 Clark and Abdul Bailey participated in a
 series of shootings, robberies and assaults,
 [defendant] was found with a loaded handgun
 in his waistband, with Bailey and in the
 vicinity of Clark. This evidence and the
 reasonable inferences demonstrate for the
 purposes of probable cause, that he was
 operating to further the interest of the Dirty
 Blok gang and in particular, two of the
 members or associates, Austin Clark and Abdul
 Bailey. It should also be noted that the
 weapon found on [defendant] was one round
 short of being full. An unspent .45 caliber
 round was located following his arrest in the
 back of the . . . Robinson Avenue property in
 the area . . . where Austin Clark's bucket
 style/fisherman's hat was located. His
 presence at the scene of the arrests of the
 Dirty Blok gang members or associates, Clark
 and Bailey, coupled with the fact that he was
 carrying a loaded high caliber handgun leads
 the [c]ourt to believe there is a well-
 grounded suspicion that [defendant] possessed
 the weapon for the unlawful purpose of
 furthering the interests of the Dirty Blok
 gang and to use it unlawfully against the
 person or property of another. This is
 further supported by the testimony that after
 the seizure of his weapon, [defendant] nodded
 affirmatively to Abdul Bailey who told him to
 keep his mouth shut and not say a f***ing
 thing.

 The judge also rejected defendant's argument that the State

abused its discretion in seeking waiver. Judge Marczyk considered

defendant's assertions that "[defendant] was not present at any

 11 A-4398-14T1
of the sites of the criminal activity that took place earlier in

the evening[,]" and "there [was] no evidence that [defendant]

acted in collusion or as an accomplice with Clark or Bailey." The

judge also considered defendant's contention that "while bench

warrants were outstanding at the time of his arrest, he had never

been adjudicated [delinquent] of any prior offenses." However,

Judge Marczyk was persuaded by the State's analysis that

"notwithstanding the lack of prior adjudications, . . . the ongoing

conflict between the Dirty Blok gang and the 800 Blok gang and the

negative impact on the quality of life of large segments of the

community coupled with the evidence that [defendant] was

associated with the Dirty Blok organization" supported the State's

decision to seek waiver. The judge concluded that the statement

of reasons provided by the State "describe[d] in great detail the

nature of the offense and the surrounding circumstances" rather

than "a 'series of cursory conclusions.'" Moreover, according to

the judge, the State adequately "addresse[d] the other factors set

forth in the guidelines[.]"

 On appeal, defendant argues:

 POINT I

 THE FACTS AND ALLEGATIONS PRESENTED BY THE
 STATE, AND THE FINDINGS OF THE TRIAL COURT,
 WERE INSUFFICIENT AS A MATTER OF LAW TO
 ESTABLISH PROBABLE CAUSE THAT J.C. COMMITTED
 THE OFFENSE OF POSSESSING A WEAPON FOR AN

 12 A-4398-14T1
 UNLAWFUL PURPOSE BECAUSE NO ACTUAL UNLAWFUL
 PURPOSE WAS EVER DEFINED.

 POINT II

 BY IMPROPERLY ANALYZING SOME OF THE FACTORS
 SET FORTH IN THE ATTORNEY GENERAL JUVENILE
 WAIVER GUIDELINES, AND FAILING TO CONSIDER
 OTHERS, THE STATE ABUSED ITS DISCRETION IN
 DECIDING TO SEEK WAIVER IN THIS CASE.

 POINT III

 THE STATE VIOLATED J.C.'S DUE PROCESS RIGHTS
 BECAUSE IT CHARGED HIM WITH POSSESSION FOR AN
 UNLAWFUL PURPOSE SOLELY TO SECURE A TACTICAL
 ADVANTAGE BY PREVENTING HIM FROM ASSERTING THE
 POSSIBILITY OF REHABILITATION AS A DEFENSE TO
 WAIVER.

We reject each of these contentions and affirm substantially for

the reasons expressed in Judge Marczyk's cogent and well-reasoned

written opinion. We conclude Judge Marczyk's decision to grant

the waiver met all constitutional and statutory requirements and

followed the applicable legal standards. We add only the following

comments.

 N.J.S.A. 2A:4A-24 confers jurisdiction over offenses

committed by juveniles to the Family Part. N.J.S.A. 2A:4A-26(a)

vests the prosecutor with discretion to seek a waiver of this

jurisdiction for certain specified offenses committed by a

juvenile fourteen years of age or older. These offenses are

referred to as "Chart 1" offenses, and include unlawful possession

of a weapon, N.J.S.A. 2A:4A-26(a)(2)(a), possession of a weapon

 13 A-4398-14T1
for an unlawful purpose, N.J.S.A. 2A:4A-26(a)(2)(i), and offenses

committed in "an aggressive, violent and willful manner." N.J.S.A.

2A:4A-26(a)(2)(d).

 We consider the Family Part judge's decision in juvenile

waiver cases under an abuse of discretion standard, which requires

that "findings of fact be grounded in competent, reasonably

credible evidence" and "correct legal principles be applied." In

re State ex rel. A.D., 212 N.J. 200, 214-15 (2012) (citation

omitted). Only where the Family Part judge exercises a "'clear

error of judgment that shocks the judicial conscience'" will we

substitute our own discretion for that of the waiver court. Id.

at 215 (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)).

 In the case of a juvenile sixteen years or older charged with

a Chart 1 offense, the only issue to be determined by the Family

Part judge at the waiver hearing is whether there is probable

cause to believe the juvenile committed the delinquent act.

"Probable cause is a well-grounded suspicion or belief that the

juvenile committed the alleged crime." State v. J.M., 182 N.J.

402, 417 (2005) (citing State v. Moore, 181 N.J. 40, 45 (2004)).

"Probable cause may be established on the basis of hearsay evidence

alone, because a probable cause hearing does not have the finality

of trial . . . and need not be based solely on evidence admissible

in the courtroom." State in Interest of B.G., 247 N.J. Super.

 14 A-4398-14T1
403, 409 (App. Div. 1991) (citations omitted). Moreover, the

nature of a probable cause determination "'does not require the

fine resolution of conflicting evidence that a reasonable-doubt

or even a preponderance standard demands, and credibility

determinations [will] seldom [be] crucial in deciding whether the

evidence supports a reasonable belief in guilt.'" J.M., supra,

182 N.J. at 417 (quoting Gerstein v. Pugh, 420 U.S. 103, 122, 95

S. Ct. 854, 867, 43 L. Ed. 2d 54, 69 (1975)).

 "On a finding of probable cause for any of [the] enumerated

offenses, no additional showing is required for waiver to occur.

Jurisdiction of the case shall be transferred immediately." R.

5:22-2(c)(3). "Simply stated, when a sixteen-year old or above

is charged with an enumerated offense, the prosecutor need only

establish probable cause for the court to waive the juvenile to

adult court." J.M., supra, 182 N.J. at 412. That being said, "a

juvenile seeking to avoid the 'norm' of waiver . . . when probable

cause is found to exist, must carry a heavy burden to clearly and

convincingly show that the prosecutor was arbitrary or committed

an abuse of his or her considerable discretionary authority to

compel waiver." State in re V.A., 212 N.J. 1, 29 (2012).

 To ensure uniform application of the waiver statute, pursuant

to N.J.S.A. 2A:4A-26(f), the Attorney General has promulgated

guidelines that prosecutors must follow in making the waiver

 15 A-4398-14T1
decision. Attorney General's Juvenile Waiver Guidelines (March

14, 2000) (Guidelines), available at

http://www.nj.gov/oag/dcj/agguide/pdfs/AG-Juvenile-Waiver-

Guidelines.pdf. The Guidelines, in turn, "require preparation of

a written statement of reasons for waiver, in which the prosecutor

must 'include an account of all factors considered and deemed

applicable.'" V.A., supra, 212 N.J. at 12 (quoting Guidelines,

supra, at 7). The factors to be considered by the prosecutor are:

the nature of the offense; deterrence; the effect of waiver on co-

defendants; the maximum sentence and length of time to be served

if prosecuted as an adult or as a juvenile; the juvenile's prior

record, if any; trial considerations and the victim's input.

Guidelines, supra, at 5-6.

 The prosecutor's statement of reasons must reflect an

individualized consideration of the evidence, taking into account

all applicable factors. See V.A., supra, 26-27. If the statement

"is a mere regurgitation of the Guidelines' language, that will

not show that the prosecutor engaged in an individualized decision,

rendering the overall decision susceptible to the claim that it

is arbitrary and constitutes an abuse of discretion." Id. at 28.

The burden of proof rests with the juvenile to show "clearly and

convincingly that a prosecutor abused his or her discretion[.]"

Id. at 26.

 16 A-4398-14T1
 Judged by these standards, we agree with Judge Marczyk that

the prosecutor established probable cause that defendant, an

associate with the Dirty Blok gang and its two senior members,

possessed a cocked, loaded and accessible handgun for an unlawful

purpose, namely, to be used in connection with unlawful gang

violence. Further, defendant failed to carry his heavy burden to

show that the prosecutor's decision to seek waiver constituted an

abuse of discretion. The prosecutor's statement of reasons

discussed in sufficient detail all of the Guidelines' factors that

were relevant to the waiver decision and made a reasoned,

qualitative evaluation of those factors. We therefore conclude

Judge Marczyk's findings of fact were "grounded in competent,

reasonably credible evidence," he applied the "correct legal

principles[,]" and there was no "clear error of judgment that

shocks the judicial conscience." R.G.D., supra, 108 N.J. at 15.

 Affirmed.

 17 A-4398-14T1