# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0377-24

STATE IN THE INTEREST
OF M.C., a juvenile.

_____

Submitted March 18, 2025 – Decided April 15, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FJ-06-0179-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant M.C. (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent State of New Jersey (Robert A. Polis II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this interlocutory appeal M.C.[1] appeals from the August 12, 2024 order granting the State's motion to waive jurisdiction of all charges against him from the Family Part to try him as an adult in the Criminal Part pursuant to N.J.S.A. 2A:4A-26.1. M.C. contends (1) the State's waiver decision was an abuse of discretion, (2) the State considered inappropriate factors, and (3) the State failed to consider relevant factors, all of which constituted a clear error in judgment. We discern no abuse of discretion or error of law in the waiver decision and affirm.

We derive the facts from the testimony elicited during the waiver hearing before the Family Part judge.  Millville Police Department (MPD) Detective Joshua Smith testified on August 21, 2023, at approximately 1:18 a.m., officers responded to the area of North 8th Street and East Vine Street regarding a report of a shooting incident that occurred earlier that night.  When the officers arrived, they learned that shots were fired at 722 East Vine Street.  Officers recovered twenty-eight shell casings on the east side of the home from three different firearms:  a 9-mm caliber gun; a .45 caliber gun; and a 7.62-mm gun.

---

[1]  We use initials and pseudonyms to protect the identity of the juvenile and parties in this case.  We also use initials when describing the other involvement of persons contacted during the investigation to aid in protecting the victims' identity.  R. 1:38-3(d)(8), (12).

K.J. (Kyla) reported to detectives that Gerald Smith asked her for a ride. Kyla picked up Smith at a friend's home and then picked up M.C., who had a "heavy," "red, gym style duffle bag" at his home. While driving, Kyla overheard Smith and M.C. talk about a "K," which she believed to be an AK-47 or "something similar to that [firearm]" concerning the East Vine Street shooting.[2] She also believed the duffle bag carried by M.C. contained the rifle. Jupin then dropped off M.C., with the red duffle bag, on South 2nd Street.

Later that morning, detectives received additional information from Kyla that M.C. was in the area of South 3rd Street. Detectives canvassed the area and observed M.C. walking north from South 5th Street. When they attempted to stop M.C. regarding the shootings, M.C. fled, and detectives began a foot pursuit. M.C. was apprehended and subsequently detained at Essex County Juvenile Detention Center.

After M.C.'s arrest, officers cleared the scene and observed J.H., Smith's brother, walking north in the area of South 5th Street. J.H. was jaywalking and carrying a large trash bag with "a long, hard object that was poking through the bag, which was believed to be a rifle." J.H. appeared "nervous" when he saw

---

[2] While Jupin believed the rifle referenced was an AK-47, the police report only referenced a rifle that fires 7.62-mm rounds.

the detectives. He turned around and headed east on Smith Street and proceeded down an alleyway. Detectives observed Smith standing in front of the alleyway between Smith Street and Florence Avenue without the trash bag. When J.H. saw the detectives, he headed towards South 2nd Street. He was eventually located on the phone with his mother.

Other detectives walked through the alleyway and located the trash bag partially concealed under a gray tarp. A detective observed a solid object "almost poking" through the trash bag and determined that it was the rifle muzzle. Detectives then opened the bag and found a 7.62-mm rifle inside.

After M.C.'s arrest, detectives conducted an investigative motor vehicle stop and seized Smith's phone. Thereafter, a court executed a communications data warrant on Smith's cellphone. Detectives then retrieved Instagram messages between Smith and "trapshiimikey," who was subsequently identified by officers as M.C. Those messages discussed a "swap" of firearms where M.C. would trade his handgun for Smith's 7.62-mm rifle. M.C. also wanted to purchase ammunition. Detectives also saw messages that M.C. wanted the rifle to use it in the August 21 shooting. M.C. identified "Cris" as the driver in the shooting incident, who was subsequently identified as Christopher Burns by detectives.

4

During an interview with detectives, Burns admitted to driving the SUV on the night of the shooting and identified M.C. as one of the two shooters. Burns told detectives M.C. fired a rifle at the East Vine Street home. The detectives also matched Burns's SUV to the SUV observed on the video surveillance footage. The surveillance showed that an SUV slowly drove down North 8th Street with the lights off, pulled up at 722 East Vine Street, and individuals exited the SUV and shot at the home. No one was struck or injured as a result of the shooting.

M.C. was arrested and charged in a juvenile complaint with acts of delinquency that, if committed by an adult, would constitute first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1), 2C:11-3(a)(1); first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1), 2C:11-3(a)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1).

In November 2023, the State moved to waive jurisdiction of the case to the Law Division and try M.C. as an adult in the Criminal Part under N.J.S.A. 2A:4A-26.1 and Rule 5:22-2. The State supported its application with a written statement of reasons addressing the eleven factors under N.J.S.A. 2A:4A-

26.1(c)(3)(a) to (k). That submission was based on all relevant evidence known to the State at that time.

Following its analysis of factors (a), (b), (c), (d), (f), (g), (i), and (k), the State noted those factors "should weigh in favor of waiver." As to factors (e), eligibility for special education; (h), previous custodial disposition in a State juvenile facility; and (j), evidence of mental health concerns, substance abuse, or emotional instability of the juvenile, the State had not received any information and determined those factors should bear no weight for waiver.

In April 2024, defense counsel submitted a forensic expert report prepared by Dr. Joël Núñez concerning his psychological examination of M.C. The report addressed M.C.'s cognitive abilities based on the examination, M.C.'s educational records, and various psychological tests. Dr. Núñez opined that a total of eleven adverse childhood experiences "place[d] [M.C.] in the 99.99[% . . .] of most traumatized youth."[3] Dr. Núñez addressed each of the statutory factors and recommended that M.C. be adjudicated as a juvenile for the purpose of trial and any treatment or sentencing.

---

[3] Adverse childhood experiences are defined in psychological literature as having a causal role in children experiencing "cognitive, emotional, behavioral, interpersonal and general health difficulties throughout the lifetime."

A-0377-24

The State submitted a supplemental written statement of reasons, which reflected its consideration of the narrative report and stated, "the information provided [by Dr. Núñez] [did] not change the State's position nor [had] the State abused its discretion." The State proceeded with its motion for an involuntary waiver.

The Family Part judge conducted a hearing. The State presented testimony from Detective Smith regarding the investigation of the shooting. M.C. presented testimony from Dr. Núñez regarding his evaluation and findings, which was consistent with his expert report. On August 12, 2024, the judge entered an order and issued a written decision granting the State's waiver motion. In doing so, the judge credited Detective Smith's "extensive" testimony regarding the investigation prior to M.C.'s arrest. The judge also credited Dr. Núñez's "thorough" and "clear" testimony, which supported his "thoughtful" and "comprehensive" evaluation and expert report. After considering and analyzing the eleven statutory factors, the judge found the State did not abuse its discretion based on the "thorough" analysis of the factors and M.C.'s individual background.

On appeal, M.C. raises the following arguments:

> POINT I. THE [STATE]'S DECISION TO WAIVE M.C. TO ADULT COURT WAS AN ABUSE OF

DISCRETION BECAUSE THE [STATE] CONSIDERED INAPPROPRIATE FACTORS, FAILED TO CONSIDER RELEVANT FACTORS, AND THE DECISION CONSTITUTED A CLEAR ERROR IN JUDGMENT.

A.  The [State] Abused Its Discretion in Finding that Factor (a), the Nature and Circumstances of the Offenses Charged, Weighed Heavily in Favor of Waiver.

B.  The [State] Abused Its Discretion in Finding that Factor (c) Weighed Heavily in Favor of Waiver by Employing a Legally Erroneous Analysis of the "Degree of the Juvenile's Culpability" and Discrediting Mitigating Evidence in the Record.

C.  The [State] Abused Its Discretion in Finding that Factor (d), the Age of the Juvenile, Weighed Heavily in Favor of Waiver.

D.  The [State] Abused Its Discretion in Finding that Factor (e), Any Classification that the Juvenile is Eligible for Special Education to the Extent this Information is Provided to the Prosecution by the Juvenile or by the Court, Bore No Weight for or Against Waiver.

E.  The [State] Abused Its Discretion in Finding that Factor (i), Current or Prior Involvement of the Juvenile with Child Welfare Agencies Bore No Weight on the Waiver Decision.

F.  The [State] Abused Its Discretion in Finding that Factor (j), Evidence of Mental Health Concerns, Substance Abuse, or Emotional Instability, Bore No Weight.

A-0377-24

G. The [State]'s Flawed Analysis of the Statutory Factors Resulted in a Clearly Erroneous Waiver Decision, such that the Waiver Order Should be Reversed.

In juvenile waiver cases, our standard of review "is whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." State in the Int. of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)). We employ a deferential standard and consider the family court's expertise, common sense, and experience in juvenile matters. Id. at 52 (citing R.G.D., 108 N.J. at 16 n.7).

However, an abuse of discretion review does not permit the family court to "substitute its judgment for that of the [State]." State in the Int. of V.A., 212 N.J. 1, 8 (2012). "[T]he standard of review of the [State]'s waiver decision is deferential." State in the Int. of Z.S., 464 N.J. Super. 507, 519 (App. Div. 2020). The review is limited, yet substantive, to ensure the State made an individualized decision about the juvenile that was neither arbitrary nor an abuse of the State's considerable discretion. V.A., 212 N.J. at 8. Accordingly, the family court "should uphold the [State's] decision unless it is 'clearly convinced that the

[State] abused [its] discretion in considering' the enumerated statutory factors."
Z.S., 464 N.J. Super. at 519-20 (quoting N.J.S.A. 2A:4A-26.1(c)(3)).

Here, M.C. contends the State abused its discretion because it "heavily" relied on legally and factually erroneous assessments of factors (a), (c), and (d). He further contends the State abused its discretion in asserting that factors (e), (i), and (j) "bore no weight." We reject M.C.'s contentions based on his disagreement with the weight accorded to those factors. We hold the record contains sufficient reasons supporting M.C.'s waiver from the Family Part to the Criminal Part.

The State submitted an initial comprehensive written statement of reasons and a supplemental written reasons prior to the waiver hearing. The State provided responsive information for each statutory factor, explaining why the factor weighed in favor of or against waiver in both submissions. Z.S., 464 N.J. Super. at 533 (quoting N.J.S.A. 2A:4A-26.1(a)).

The supplemental written statement of reasons submitted by the State did not "mirror the statutory language in a cursory fashion." Ibid. (quoting State in the Int. of N.H., 226 N.J. 242, 250 (2016)). The statement of reasons reflected an individualized decision as to each factor.

Factor (a) requires the State to assess the nature and circumstances of the offenses charged. We hold the State did more than recite the history of the facts on which the offenses were based. The State considered Dr. Núñez's report and explained:

> The defense's expert report attempts to mitigate the nature and circumstances by referring to the idea that M.C.'s brain or any [seventeen]-year-old brain for that matter is not fully developed. However, this does not negate the nature or circumstances of the offense. It is the State's position that the allegations of shooting a gun at another in retaliation are severe in nature and could have resulted in the end of someone's life. Therefore, this factor should strongly weigh in favor of waiver.

The State also submitted that factor (c), the degree of juvenile's capability, weighed in favor of waiver, finding M.C. did not act alone. The State considered M.C.'s attempt to mitigate his actions based on his cognitive capacities, trauma, and diminished education, and contended "M.C. with others made a dangerous and criminal decision that night to get retaliation for what happened to his family members."

In considering factor (d), the age and maturity of the juvenile, both parties agreed M.C. was seventeen at the time the offenses were committed. The State argued M.C.'s age and his maturity—to "procure a handgun without a permit,

11

plan how to carry out the shooting via Instagram and text messages," and attempt to execute the plan during the shooting weighed in favor of waiver.

We reject M.C.'s argument that the State abused its discretion in finding factors (e), (i), and (j) bore no weight for waiver. As to factor (e), eligibility for special education, M.C.'s school records did not state that he was placed or eligible for special education services. Regarding (i), current or prior involvement of the juvenile with child welfare agencies, M.C. did not produce records regarding involvement with Division of Child Protection and Permanency. Lastly as to (j), evidence of mental health concerns substance abuse, or emotional instability of the juvenile, the State highlighted it had not been provided any "evidence of diagnosis for any disorders." At the hearing, Dr. Núñez explained that his report listed diagnostic impressions and did not render a diagnosis because the psychological evaluation differed from individual psychotherapy or psychiatric treatment.

Having carefully reviewed the record, we are satisfied the State did not abuse its discretion in seeking a waiver of M.C. to the Criminal Part. Both the initial written and the supplemental statement of reasons reflects an individualized decision that was not arbitrary or an abuse of its considerable discretion. V.A., 212 N.J. at 8. We conclude the record supports the Family

12

Part judge's factual findings and legal conclusions regarding the State's motion to waive jurisdiction of M.C.'s criminal matter from the Family Part to the Criminal Part.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0377-24